J. W. RICE, Appellant, v. WM. MCFARLAND *et al.*,
Respondents.

### Kansas City Court of Appeals, March 4, 1889.

**Deed of Trust:** FORECLOSURE OF : EFFECT OF RELEASE OF, BY PAYEE, NOT THEN THE HOLDER OF NOTE, BUT THE GRANTEE OF MORT-GAGOR : NEGOTIABLE NOTE : TRANSFER OF, BY DELIVERY MERELY EFFECT OF : NOTICE TO MAKER : MERGER : EQUITY RULE AS TO. On February 12, 1876, S. sold to defendant M. certain land and took in payment four negotiable notes, the first due January 1, 1878, the others, one and two years thereafter and secured them by deed of trust on the land. On September 7, 1877, S. borrows of plaintiff five hundred dollars, and as collateral security therefor transferred to him, by delivery, without endorsement, the first of said notes. But plaintiff never notified defendant M. of the transfer. On November 11, 1878, S. repurchased the land from M. the consideration being M.'s four notes originally given for it. On December 10, 1878, S. executes and places on record a release of the trust deed, declaring all the notes paid. On February 10, 1881, S. sells and conveys the land to defendant McF. *Held:*

(1) That the note in plaintiff's hands, though negotiable in form, had not, in fact, been negotiated, and, though transferred before due, was nothing more than an ordinary chose in action and subject to every defense, which not only may be connected with, or, arise out of the note itself, but also to every defense, available against the assignor, both those existing at the time of the transfer and those arising before notice of assignment.

(2) That the re-sale of the land to S. operated as a defense to defendant M. alone.

(3) That S.'s release, made and recorded while he was owner, did not operate to release the land from the lien of the note in plaintiff's hands and could not so operate in favor of defendant McF., his grantee.

(4) That the fact of the two estates uniting in S. will not avail defendant McF., since equity demands that they should be kept apart and not suffered to merge.

*Appeal from the Barton Circuit Court.*—HON. D. P.
STRATTON, Judge.

REVERSED AND REMANDED.

*Burr & Cole*, for the appellant.

(1) The *cestui que trust* alone can enter satisfaction of the record. R. S. 1879, sec. 3311. The payee of a note, secured by a deed of trust, has no authority to enter satisfaction of the mortgage, after he has parted with his interest in the note. *Lee v. Clark*, 89 Mo. 553; *Haggaman v. Sutton*, 91 Mo. 519; *Ewing v. Shelton*, 34 Mo. 513; *Boatman's S. B. v. Grewe*, 84 Mo. 478. (2) Whoever purchased land, with a recorded deed of trust, is not protected by any deed of release or marginal cancellation, to any further extent than the actual existence of facts therein set out, and the purchaser of such land purchases at his peril, as to whether those facts recited do, or do not, exist. *Chappell v. Allen*, 38 Mo. 213; *Jorden v. Schrimps*, 77 Mo. 383. (3) Section 3868, Revised Statutes of Missouri, of 1879, has no application to actions on negotiable instruments. *Cutler v. Cook*, 77 Mo. 388. (4) He who receives negotiable paper, before due, from the payee, by delivery only, as collateral security for a debt then created, on and by reason of such security, is protected against subsequent payment, without notice by the maker to the payee, such payee not having in his hands or under his control, such negotiable paper, at the time of its payment. R. S. 1879, sec. 664; *Bates v. Martin*, 3 Mo. 367; *Ins. Co. v. Cohen*, 9 Mo. 248; *Heath v. Powers*, 9 Mo. 451 (Houck's Ed.); *Beard v. Dedloph*, 29 Wis. 136; 2 Daniel on Neg. Inst. (3 Ed.) sec. 1230 A. and 1233 A.; *Goslin v. Griffin*, 3 S. W. Rep. 642; *Boeka v. Muella*, 28 Mo. 180; *Patterson v. Cave*, 61 Mo. 439; *Weber v. Orten*, 91 Mo. 677; *Quickley v. Mexico*, S. B. 80 Mo. 289. (5) The payment, by the maker, of negotiable paper to the payee, before due, without requiring the payee to produce such paper, is notice to the maker

that the payee has transferred such paper to some one else. *Goslin v. Griffin*, 3 S. W. Rep. 642; *Leavite v. LaForce*, 71 Mo. 353 ; *Ellis v. Krentzinger*, 27 Mo. 311.

*Robinson & Harkless*, for the respondents.

The burden of proving that Morris had notice of the transfer of the note to Rice, before Morris paid the note to the payee, is on the plaintiff Rice. *Hart v. Freeman*, 42 Ala. 567 ; *Heath v. Powers*, 9 Mo. 767. Promissory notes are negotiable, in like manner, as inland bills of exchange. R. S. 1879, sec. 547. Bills of exchange, payable to order, are negotiable only by indorsement. Chit. Bills, 258; Byles Bills, 235; Story Bills, sec. 201 ; Story Prom. N., sec. 120. The statute (R. S. 1879, sec. 665) providing that, "it shall not be in the power of an assignor to release a demand," etc., "after assignment," etc., has no application in this case, because: (1) The note was not assigned, and hence no assignor. An assignor is one whose transfer is by writing, as distinguished from one by delivery. 1 Bouv. Law Dict. Title Assignment. (2) This note, in the hands of Rice, unindorsed, was non-negotiable. R. S. 1879, sec. 547; *Hedges v. Seely*, 9 Bart. R. 214; Edw. Bills & Prom. N. 286 ; 2 Pars. Bills & N., 46 ; *Boeka v. Nuella*, 28 Mo. 180 ; *Patterson v. Cave*, 61 Mo. 139 ; *Weber v. Orten*, 91 Mo. 677. And hence, the above section 665 should be read in connection with section 3868, in which it is provided, "that in actions on assigned accounts and non-negotiable instruments, the defendant shall be allowed every just set-off, or other defense, which existed in his favor at the time of being notified of such assignment.

ELLISON, J.—This action is to foreclose a deed of trust. On February 12, 1876, J. A. Stearns and R. E. Doan jointly sold to the defendant Morris the northeast quarter of section seventeen (17) of township thirty-three (33), of range thirty-three (33), Barton county,

Missouri, in consideration of eighteen hundred dollars. For which they, J. A. Stearns and R. E. Doan, received four promissory notes, for four hundred and fifty dollars each, all bearing eight per cent. interest from date until paid. And the first falling due on January 1, 1878; second, January 1, 1879; third, January 1, 1880; and the fourth, January 1, 1881. All of said notes were secured by a deed of trust, duly made, executed and acknowledged by the defendant Morris and his wife, and duly recorded in the recorder's office on the twentieth day of March, 1876. The first note due of said notes, marked exhibit "C." is the foundation of this action, and is in words as follows:

"$450.　　　　　LEROY, Mo., Feb'y 12, A. D. 1876.

"On or before the first day of January, A. D. 1878, we, or either of us, promise to pay to the order of R. E. Doan and James A. Stearns four hundred and fifty dollars, eight per cent. interest from date until paid. Interest paid annually. Value received.

"MAHLAM M. MORRIS,<br>"JANE MORRIS."

On the back is the following indorsement: "For value received, I hereby assign to R. E. Doan all my interest to the within note, this July 8, 1876.

"J. A. STEARNS."

"For value received, I hereby assign the within note to J. A. Stearns, April 7, 1877.

"R. E. DOAN."

On the seventh day of September, 1877, James A. Stearns borrowed five hundred dollars of the plaintiff, and gave to plaintiff two promissory notes therefor, marked exhibits "A" and "B." Exhibit "A." is in words and figures as follows, to-wit:

"$200.　　　　　　　　　September 7, 1877.

"Twelve months after date, I promise to pay to J. W. Rice, or order, two hundred dollars, at Blanchester,

with interest at ten per cent. per annum, to be paid semi-annually.   Value received.

"J. A. STEARNS."

Note marked exhibit "B" is in words and figures as follows, to-wit:

" $300.                              January 27, 1878

"Twelve months after date, I promise to pay to J. W. Rice, or order, three hundred dollars, at Blanchester, with interest at ten per cent. per annum, to be paid semi-annually.   Value received.

"J. A. STEARNS."

At the same time, to secure the payment of this five hundred dollars so borrowed of plaintiff, by J. A. Stearns, he delivered to this plaintiff the note sued on, without any indorsement further than the indorsement already on said note.

Afterwards, on November 11, 1878, Stearns and Doan, through J. A. Stearns, repurchased the land of the defendant Morris, in consideration that all the notes, given by Morris for the purchase money, should be considered paid thereby, and should be given up to Morris by said J. A. Stearns.   This was all the consideration agreed to for this reconveyance.

In pursuance of said agreement Morris and wife on said November 11, 1878, by a good and sufficient warranty deed conveyed the land back to J. A. Stearns and R. E. Doan, and the same was duly recorded. But Stearns never delivered back to Morris any of the notes, and on the tenth day of December, 1878, James A. Stearns executed and placed on record, in the recorder's office in Barton county, Missouri, a deed of release, in which he declared that all the notes mentioned in the trust deed, given February 12, 1876, by Morris, had been fully paid off and discharged, and thereby attempted, both in his own right and as assignee of R. E. Doan, to release and discharge said

land from the lien of said trust deed, which secured the payment of the note in suit.

Afterwards, on the tenth day of January, 1879, R. E. Doan conveyed all his undivided one-half interest to James A. Stearns.

Afterwards, on the tenth day of February, 1881, James A. Stearns conveyed said lands to the defendant William McFarland.

The notes given by James A. Stearns to plaintiff, were not paid, but some interest was paid by him along from time to time, until March 16, 1883—he died insolvent.

That plaintiff had no knowledge where defendant Morris resided, and never gave Morris any notice of his interest in the note, until after the land had been conveyed back to Stearns and Doan by Morris, in payment of the notes.

After Stearns' death, March 16, 1883, his administrator was unable to pay Stearns' note to plaintiff, and plaintiff then sent note in suit to his attorneys for foreclosure.

McFarland bought the land for some two thousand dollars from J. A. Stearns, relying on the correctness of the deed of release, executed by J. A. Stearns to the defendant Morris, discharging the land from the lien of all the Morris notes.

That McFarland, at the time he purchased, knew the notes had been given by Morris for the purchase money of the land.

The court rendered a judgment in favor of defendants, as before mentioned, and from this plaintiff appeals, alleging various errors, as will hereafter appear.

This case can be more readily understood by eliminating Doan in the transactions which have occurred in its course, as he was connected with Stearns in a way that makes it unnecessary to refer to the facts otherwise than, as though Doan had no connection with them

The case can be stated then in this way : On February 12, 1876, Stearns sold to defendant Morris one hundred and sixty acres of land and took in payment therefor Morris' four negotiable notes of four hundred and fifty dollars each, the first one falling due January 1, 1878, the others yearly thereafter, and all secured by a deed of trust on the land. On September 7, 1877, Stearns borrowed of plaintiff five hundred dollars, and, as collateral security therefor, transferred to plaintiff, by delivering without endorsement, the note in controversy, being the first one aforesaid. On November 11, 1878, Stearns repurchased the land from Morris, the consideration being Morris' four notes, including the one in controversy, which he had originally given for it. On December 10, 1878, Stearns executed and placed on record, a release of the trust deed, declaring therein that all the notes had been paid. On February 10, 1881, Stearns sold and conveyed the land to defendant McFarland.

Plaintiff never notified defendant Morris that the note had been transferred to him by Stearns.

Plaintiff asks for a personal judgment against Morris, and that his lien be foreclosed on the land.

Although the note was negotiable, it was in fact not negotiated to plaintiff but transferred to him, before due it is true, but by delivery merely, and thus became in plaintiff's hands nothing more than a non-negotiable instrument or ordinary chose in action, of which, not being assignable at common law, plaintiff only became the equitable owner, though, by force of statutes and the course of the courts, he may sue on the instrument in his own name. As such owner, the note is subject in his hands, to every defense which not only may be connected with, or which may arise out of the note itself, but every defense which would have been available to the maker against his assignor. These defenses are not

only such as may exist at the time of the transfer, but such as may arise before notice of the assignment.

This is especially made so by section 3868, Revised Statutes. The rule governing defenses as to the endorsement of overdue negotiable paper has no application to such case from the fact, that, being payable to the payee or order and not having been endorsed, it loses, in the hands of such holder, all the peculiar elements of negotiable paper. Plaintiff's contention is that, as this was a negotiable note in form, only such defenses can be made against him, as assignee, as existed at *the time* he received it, and counsel have gone quite extensively into the question with a view of demonstrating the correctness of their contention. But the law is well and firmly settled that though the note is negotiable, yet if it be assigned merely by delivery, though before maturity, it becomes an ordinary *chose in action* ; and that the maker may avail himself of defenses which arise to him at any time before notice or knowledge of the assignment. *Boeka v. Nuella*, 28 Mo. 180 ; *Weber v. Orton*, 91 Mo. 677 ; *Hacket v. Martin*, 8 Maine, 77 ; *Davenport v. Woodbridge*, *Ib.* 17 ; *Jones v. Witter*, 13 Mass. 304 ; 1 Dan. Neg. Inst., sec. 742 ; 2 Parsons N. & B. 46, 47.

Stearns transferred the note to plaintiff September 7, 1877. On November 11, 1878, he again became the owner of the land by repurchase from Morris, and while such owner, on December 10, 1878, he released the trust deed securing this note, reciting that the note had been paid. February 10, 1881, more than two years afterwards, he sold to defendant McFarland.

Now conceding that Morris paid to Stearns the amount due on the note without notice, actual or implied, such payment only amounted to a defense in his favor, but certainly not in favor of Stearns or third parties. It was not properly and technically a payment and

discharge of the note, for it had been paid to one not the owner. It was a payment which operated as a defense to the payor. If Stearns had not sold the land to McFarland and this action had been brought against him to foreclose the deed of trust, no one would say that he could have defeated his own assignee by showing that he had wrongfully released the deed of trust. Having assigned the note to plaintiff and having then taken a deed to the land from defendant Morris in payment thereof and in fraud of his assignee, his release to to himself, which it was in effect, of the deed of trust of the land he then owned, was a nullity. By the transfer he parted with all interest in the note or right to its proceeds, and was powerless to release it. R. S., sec. 664. It, and the deed of trust following it, became the property of plaintiff.

The land, then, for two years while in the hands of Stearns was undoubtedly subject to the deed of trust and the question is, is it relieved of the deed of trust by sale to defendant McFarland ? We think it is not.

The release, as against the true owner of the note, really amounts only to a receipt and it may be explained or contradicted. *Chappell v. Allen*, 38 Mo. 213 ; *Jorden v. Schrimps*, 77 Mo. 383. It can only be entered by the *cestui que trust*, who, in this case, is the holder of the note, *Ib. Lee v. Clark*, 89 Mo. 553 and cases cited. In the latter case parties are admonished not to buy until they can ascertain who holds the note. In that case there were several successive *bona-fide* purchasers of the property on which the deed of trust had been given who relied upon the release which had been entered by the payee in the note therein described.

The fact that the two estates were united in Stearns will not avail defendant McFarland. When a greater and a less estate meet in the same person there will

ordinarily be a merger of the lesser into the greater, but not so when equity demands that they should be kept apart.

In *Edgerton v. Young*, 43 Ill. 468, a mortgagor conveyed to the mortgagee, and it was held that a purchaser had no right to assume an extinguishment of the mortgage and that in purchasing the land the purchaser acted at his peril. That "he knew, or must be presumed to have known, that the mortgage would be held to have merged or not have merged as equity should require, and that if, when the mortgagor conveyed to the mortgagee, the latter had sold the note secured by the mortgage, then equity would require the mortgage to be kept alive and he would acquire by his purchase only the estate of the mortgagor."

In this case there is, in addition to the deed from the mortgagor to the mortgagee, a release of the mortgage by the mortgagee *after* he receives the conveyance from the mortgagor ; in other words a release to himself which we think does not put McFarland in any better position. The judgment is reversed and the cause remanded. All concur