DAVID L. BARTLETT, Appellant, v. EUGENIA S. EDDY *et al.*, Respondents.

Kansas City Court of Appeals, March 7, and April 4, 1892.

1.  **Assignments:** CHOSES IN ACTION: DELIVERY: NOTICE: COMMON LAW: STATUTE.   At common law the assignment of choses in action was not recognized, and was only vitalized by equity and through the use of the assignor's name, and the title thereto was not perfected as against the debtor till notice of the assignment to him, but, under the

Bartlett v. Eddy.

statute, the assignment and delivery of bonds and notes immediately vests the legal title in the assignee without notice, and he may sue in his own name, while in the case of such choses in action as are not capable of manual delivery notice seems necessary to complete the title. (Missouri statutes and cases reviewed.)

2. ————: DISCHARGE BY ASSIGNOR: DEFENSE. The present statute puts it out of the power of the assignor to release a note after he has assigned it, but reserves to the payor (and to him alone) the defense which accrued to him before notice of the assignment. GILL, J., *dissenting, holds* that in this case, though there was an assignment as between the assignor and assignee, yet it was not effective as against the debtor without notice.

3. ————: PAYMENT BY MAKER: MORTGAGE. If the payor, without notice of the assignments, pays the sum due on the note to the assignor, such payment, while it is not properly speaking a payment of the note, will operate as a discharge of, or a defense for, the payor; but will not discharge the lien of a mortgage on lands in the hands of a third party who is not connected with the mortgage. [GILL, J., *dissenting.*]

4. ————: ————: ————. Payment to an assignor after an assignment of a non-negotiable note amounts to nothing more than a defense to the payor alone, and to no one else save those who by their relation to the payor could compel him to make good their loss.

5. ————: REGISTRY STATUTE. The registry statute does not require the assignment of a note and mortgage to be recorded, nor require the assignee to notify the successive grantees of the assignor of the assignment.

6. ————: CONVEYANCE OF MORTGAGE TO MORTGAGOR NO MERGER. Where a mortgagee after the assignment of the note to a third party takes a conveyance of the mortgaged premises to himself, equity will not permit such conveyance to operate as a merger of the two estates in him.

7. Mortgages: RELEASE BY MORTGAGEE. The fact that a mortgagee, after assignment of the mortgaged debt, enters a satisfaction of the mortgage on the margin of the record cannot affect the rights of his assignee, or his grantees after his subsequent acquisition of the mortgaged premises.

8. Assignment: CONVEYANCE TO MORTGAGEE: ESTOPPEL. SMITH, P. J., *concurring:* "Where a mortgagee, after his assignment of the note, takes a quitclaim deed to the mortgaged premises in satisfaction of the note, he is estopped as against his assignee to deny the mortgage lien on the premises, and so are his grantees. GILL, J., *dissenting, holds* that such transaction bars the foreclosure of the mortgage, the debt and the mortgage being for this purpose inseparable, and when the note is paid the mortgage expires.

Bartlett v. Eddy.

9. ——: NOTICE: PAYMENT TO ASSIGNOR: EFFECT ON MORTGAGE. GILL, J., *further dissenting:* Where the assignee of a non-negotiable note secured by a mortgage fails to give notice of the assignment to the payor, the latter is justified in regarding the assignor still the owner or the agent of the owner to receive payment; and payment to the assignor is a complete and entire satisfaction of the debt, and the mortgage security on the land is extinguished with the debt (*doubting Rice v. McFarland*, 34 Mo. App. 404); nor is this position impaired by the rule that, though an action on the debt be barred by the statute of limitations, yet a suit on mortgage may be maintained.

*Appeal from the Nodaway Circuit Court.*—HON. CYRUS A. ANTHONY, Judge.

AFFIRMED.

*William C. Ellison,* for appellant.

(1)   R. S. 1889, sec. 8161; 2 Jones on Mortgages [3 Ed.] sec. 1631; vol. 1, sec. 727; 3 Randolph on Commercial Paper, sec. 1417; *Trustees v. Wheeler,* 61 N. Y. 88; *Howard v. Gresham,* 27 Ga. 347; 1 Jones on Mortgages [3 Ed.] sec. 604; *McCabe v. Farnsworth,* 27 Mich. 52; *Bank v. Bynum,* 84 N. C. 21; *Hubbard v. Turner,* 2 McLean, 519; *Jones v. Smith,* 22 Mich. 360; *Sharts v. Awalt,* 73 Ind. 304; 2 Herman on Estoppel, sec. 914; *McClurg v. Phillips,* 57 Mo. 214; *Anderson v. Baumgartner,* 27 Mo. 80; *Hughes v. McAlister,* 15 Mo. 296; *Lee v. Turner,* 89 Mo. 489; *Neuhoff v. O'Reilly,* 93 Mo. 164; *Bank v. Bank,* 71 Mo. 195; *Turner v. Hoyle,* 95 Mo. 337; *Anderson v. Bank,* 14 Iowa, 544; *Lewis v. Kirk,* 28 Kan. 497; 1 Jones on Mortgages [3 Ed.] sec. 492; 2 Pomeroy on Equity Jurisprudence, sec. 794.   (2)   In conclusion, I wish to refer especially to the case of *Rice v. McFarland,* 34 Mo. App. 404.   While what is said in the opinion in that case does not cover all of the questions raised in this, it must be said that it is opposed to some of the propositions herein submitted.   If there is a single authority in the states, going as far as that

opinion, I have not been able to find it.   Certainly none such are cited.   *Edgerton v. Young*, 43 Ill. 464, is referred to, but the title relied on there to defeat the mortgage was founded on an execution sale.   Moreover, the note was negotiable, and assigned by indorsement, for value, before maturity.   No negligence was chargeable to the assignee for failing to give notice of the assignment.   No negligence of the assignee enabled his assignor (the mortgagee) to practice deception on the mortgagor, and get the title away from him.   Such, and more, are the facts in this case; and while the equities were not so persuasive in *Rice v. McFarland*, I think they were sufficient to have justified a different opinion.   However that may be, the Illinois case, in so far as it bears the slightest analogy to *Rice v. McFarland*, was overruled by the same court in the case of *Ogle v. Turpin*, 102 Ill. 148.

*S. R. Beach* and *W. C. Frank*, for respondents.

(1)   Appellant insists that Craig was, to some extent, respondents' agent, simply because he sent interest to them, to be credited upon the note.   But if our agent he couldn't receive payment of our debt in land from Hall to Seals, nor in anything but money (even if he had the note in his possession, which he didn't).   *Wheeler & Wilson v. Given*, 65 Mo. 89; *Smith v. Johnson*, 71 Mo. 382; *Martin v. United States*, 15 Am. Dec. 129–133; *Graham v. Savings Inst.*, 46 Mo. 186; 2 Daniels on Negotiable Instruments [2 Ed.] sec. 1245.   (2)   The question in the case, "Did our deed of trust merge into Craig's after-acquired title received from Hall?   We say not.   Equity very properly steps in to prevent a merger where the merger would operate to carry into effect a wrong and a fraud.   The doctrine of set-off (R. S. 1889, sec. 8161) has no application in

this suit. The fact that the title to the same land afterwards, and after he had assigned the note, was lodged in Craig (the former title conferred upon him by the deed of trust having been assigned to us), would not merge into his after-acquired title, nor be, in any way, affected by it. 1 Jones on Mortgages [3 Ed.] sec. 872; *Collins v. Stocking*, 98 Mo. 290; *Pratt v. Bank*, 33 Am. Dec. 201. (3) Craig, the payee of the note, assigned it to us, January 15, 1886, and attempted to release the deed of trust on the margin of the record, without knowledge or consent of, or any authority from, respondents, on July 27, 1889, which he could not do, not then being the beneficiary, negotiable or non-negotiable, and our statutes require no notice or recording of an assignment. R. S. 1889, sec. 2390; *Rice v. McFarland*, 34 Mo. App. 404; *Bank v. Grewe*, 84 Mo. 478. And the deed of trust lien is even more sacred or better guarded than the debt itself. *Lee v. Clark*, 89 Mo. 553–9; *Hagerman v. Sutton*, 91 Mo. 520; 1 Jones on Mortgages [3 Ed.] sec. 814. (4) All the antagonistic parties in this suit are estopped by the fact that they "all knew from examination of the records on July 27, 1889 (before plaintiff got any title to any of this land), 'that our deed of trust stood unsatisfied on the record,'" and the record showed when all these after loans were made, and plaintiff was bound by the records to know that Hall had deeded the land back to Craig and to ascertain whether a merger had taken place. *Hasenritter v. Kirchoffer*, 79 Mo. 242, and authorities there cited; *Taylor v. Fox*, 16 Mo. App. 527.

ELLISON, J.—The defendant, Mrs. Eddy, is the *bona fide* assignee for value of a non-negotiable promissory note and deed of trust securing same. The note was given to Silas L. Craig by John Hall, and by Craig

assigned to Mrs. Eddy. The plaintiff seeks to enjoin Mrs. Eddy from foreclosing the deed of trust. The case was tried on an agreed statement of facts. The statement is quite lengthy, but the following is believed to be a sufficient epitome to a full understanding of the case.

December 1, 1885, Craig sold to Hall the southwest quarter of the southwest quarter, and the southeast quarter of the southwest quarter, and took note and deed of trust for $700, due in two years, to secure purchase money. He recorded the deed of trust, January 13, 1886. January 15, 1886, Craig assigned in writing and delivered said note and deed of trust to Mrs. Eddy who paid value in good faith. October 15, 1887, Hall conveyed back to Craig (as he supposed but in reality to one Seals), by quitclaim deed, all the land he bought of him, for the consideration of the $700 note (theretofore assigned and delivered to Mrs. Eddy unknown to Hall), and some other land. Hall demanded his note of Craig, but was put off from time to time till May 17, 1890, when Craig gave him a receipt. Seals had no interest in any of the transactions in this case. He was merely Craig's shadow, Craig using his name instead of his own.

May 1, 1888, Craig borrowed of Gilbert and Gay $1,000, and to secure same gave (through Seals) deed of trust on the southwest quarter of the southwest quarter. On the same day he gave a second deed of trust to Bartlett Bros. for $100. Neither of these beneficiaries had actual knowledge of the note and deed of trust which had been assigned to Mrs. Eddy, but relied on Craig's assurances that the title was clear.

May 1, 1888, Seals conveyed to Craig by warranty deed the southeast quarter of the southwest quarter, and Craig on the same day conveyed same tract by warranty deed to Joseph L. Dunning, Dunning relying

on Craig's representations that the note was paid. May 1, 1888, Dunning borrowed, through Craig, $850 of Gilbert & Gay, and to secure it gave deed of trust on the said southeast quarter of the southwest quarter, Gilbert & Gay relying on Craig's statement that the title was clear. July 27, 1889, Gilbert & Gay and Bartlett Bros. inquired of both Craig and Hall about the Hall-Craig note and deed of trust (which had been assigned to Mrs. Eddy more than three years before), and were told by them that they were paid; and Craig on that day did enter satisfaction on the record.

December 10, 1889, Seals conveyed to Craig, by warranty deed, the southwest quarter of the southwest quarter, which, as shown above, had been mortgaged to Gilbert & Gay to secure $1,000 and to Bartlett Bros. to secure $100. December 20, 1889, Craig conveyed, by warranty deed to the plaintiff, the southwest quarter of the southwest quarter, representing that the Hall-Eddy note was paid. August 15, 1890, plaintiff got notice of the assignment to Mrs. Eddy.

November—, 1890, plaintiff purchased at sale, under the Dunning deed of trust to Gilbert & Gay, the southeast quarter of the southwest quarter, and also purchased at sale under the Seals deed of trust to Bartlett Bros. the southwest quarter of the southwest quarter.

In the foregoing transactions of Craig, since his assignment to Mrs. Eddy, he was acting fraudulently and in bad faith.

The question presented by these facts is whether Mrs. Eddy, as assignee, can subject the land in plaintiff's hands to the lien of the deed of trust securing the note assigned to her. Formerly, at common law, the assignment of choses in action was not recognized. Whatever vitality it had came from equity, and the remedy of the assignee on the instrument was in equity

(Story on Contracts, sec. 465), and through the use of the assignor's name. Under such conditions it was generally understood that the title to the chose was not perfected in the hands of the assignee as against the dector till he had given notice of the assignment to the debtor. Such is not the rule now as to a bond or note. Our statute now provides that such assignment may be made, and that the action thereon may be in the name of the assignee. The effect of this is that now the legal title is vested in the assignee immediately upon assignment without regard to notice to the debtor. As to that vast variety of choses capable of assignment, other than bonds or notes, such, for instance, as may arise from funds or annuities provided by will or deed, and which are not capable of manual delivery, it seems that notice to the trustee or debtor is necessary to complete the title. The whole object of the rule, either in law or equity, is to put it out of the power of the assignor to commit fraud, and, therefore, possession in the assignee is the requisite to the validity of the assignment. But as to those choses which have, so to speak, no individuality, and which cannot be delivered, notice to the trustee or debtor is considered a symbolical delivery. In each case fraud is prevented. If the bond or note be delivered to the assignee no one can be imposed upon as a subsequent assignee, for the assignor has not the thing to assign, nor can the debtor be defrauded (except through his own negligence) by paying to his creditor, the assignor; for he should, unless excused by statute, see that such assignor has the note. In the other instance, when possession cannot be bodily delivered, a notice to the trustee or debtor answers every purpose of protection. Leaving the assignor in possession of a bond or note is like leaving him in possession of any other chattel after sale; it gives him the appearance of ownership, and enables him to defraud those

with whom he may afterwards deal.    These views are
supported by the case of *Dearle v. Hall*, 3 Russell, and
*Ryall v. Rowells*, 1 Ves.  Sr. 347.    And considerations
similar to these doubtless led Judge Scott to say in
*Richards v. Griggs*, 16 Mo. 416:  "When debts are
assigned which are evidenced by bond, bill or note, the
debtor is never at a loss to know to whom it shall be
paid, as he is warranted in taking up the instrument in
whosoever's hands it may be found.    But not so with
regard to those *choses*, whose existence is not witnessed
by any such instrument.    Anybody may obtain a copy
of a judgment, or make out an account, and a debtor
or trustee pays debts of this character at his peril to
any other person than him who is really entitled to
them."    See, also, where the same matter is stated in
yet stronger terms:    *Gayoso Savings Inst. v. Fellows*, 6
Cald. 467;  *Mutual Pro. Ins. Co. v. Hamilton*, 5 Sneed,
269.

But the statutes of Missouri, beginning at an early
day, made alterations in the law as it stood before its
enactment.    I will notice these.    In 1825 the statute
was that it should not be in the power of an assignor
to release a demand after he had assigned it;  provided,
however, that the defendant could make the same
defense against the assignee that he could have made
against the assignor if the note had remained in his
possession when the defense accrued.    The case of
*Bates v. Martin*, 3 Mo. 367, arose under this statute.
In that case the note was assigned and delivered, and
afterwards the payor paid the sum due on the note to
the assignor.    The court held (construing the forego-
ing statute) that the defense of payment accrued while
the assignee held the note;  that before the payor paid
the money he should have seen that the payee still
retained the note, and that it was the duty of the payor
to look after his note, and to know that he pays his

money to whom it is due. To the same effect are the cases of *St. L. Perp. Ins. Co. v. Cohen*, 9 Mo. 442, and *Heath v. Powers*, 9 Mo. 774. Our statute is not now the same. It is now provided as it was formerly: "It shall not be in the power of the assignor of a demand, after assignment, to release any part of it." R. S. 1889, sec. 2390. But under the heading of "set-off" it is now provided that "in actions on assigned accounts and non-negotiable instruments, the defendant shall be allowed every just set-off or other defense which existed in his favor at the *time of his being notified* of such assignment." Sec. 8161. The present statute, then, puts it out of the power of an assignor to release the note *after* he has assigned it, but preserves to the payor (and to the payor only) the *defense* which accrued to him before notice of the assignment. The legal title to the note is in the assignee upon the assignment in writing and delivery. He is the owner, and the only one to whom it can be paid or who can discharge or release it; and so the statute enacts. By force of the same statute, however, if the payor, without notice of the assignment, pays the sum due on the note to the assignor, such payment, while it is not, properly speaking, a payment of the note, will operate as a discharge of, or *defense* for, the payor. *Rice v. McFarland*, 34 Mo. App. 404. But it will not discharge the lien of a mortgage on lands in the hands of a third party who is not connected with the mortgage. *Rice v. McFarland*, 34 Mo. App. 404. It by no means follows that in all instances of discharge of the debtor the mortgage dies. There may be a discharge of the debtor without a discharge of the debt. There are numerous instances in which the mortgage lien remains after the discharge of the mortgagor. *Hemenway v. Bassett*, 13 Gray, 378; *Baldwin v. Norton*, 2 Conn. 161.

We may concede here that a negligent payment, as made by Hall, of the sum due to an assignor after assignment and delivery to the assignee, would be one of the " defenses " contemplated by the statute.  But I am confident that an examination of this question of assignment of choses in action, from its origin down, as it is now influenced or governed by the statute, will show that a payment to an assignor, *after* assignment, of the sum due on a non-negotiable note amounts to nothing more than a defense to the payor.  The importance here of this distinction is that if it be allowed to be good it defeats the plaintiff in this action.  Here the payor, without notice of the assignment, paid the amount of the note to the assignor after he had assigned it to this defendant, by making a quitclaim deed to the land covered by the mortgage.  This land has found its way by successive conveyances to these plaintiffs.  Now, can they avail themselves of a defense which the statute only gives to the payor?  I am satisfied that they cannot.  The statute allows to the *payor* " every just set-off or other defense."  It must be conceded that all other defenses than payment would be personal to the payor.  If, in this case, the payor had not paid the sum due on the note, but had had a set-off against the assignor which he might have availed himself of if he had been sued, would it be contended that these plaintiffs could use such set-off in their behalf?  There are other defenses which might be asserted by the payor, but which no one would consider available to anyone else.

There is a qualification to be made to the foregoing general statement.  It is this:  Those, who, by their relation to the payor could compel him to make good their loss, would be entitled to enforce for their protection the right which would exist in the payor if he were sued.  It has even been held that judgment creditors

were such parties as could be subrogated to the payor's right. 1 Hopkins, 579; 9 Cowen, 409. However this may be, I should say certainly that, wherever the effect of the disallowance of the defense, when set up by a third party, would be to ultimately throw the loss on the payor, then the defense should be allowed; for in such case it is to the personal benefit and interest of the payor. To illustrate: If in this case Hall had made a general warranty deed, instead of a quitclaim, he would have been responsible on such warranty to the plaintiffs for the incumbrance, if they should be compelled to pay it, so that the defense of payment, which in that case should be interposed by these plaintiffs by proper plea, would inure to the benefit of the payor whom the statute intended to protect. This phase of the question was not considered in *Rice v. McFarland, supra.*

This is in keeping with the principle, asserted in some quarters, that the equities of third parties are not available against the assignee, for, in the instances given, the parties are not properly third parties; they assert, by right, the defenses of the payor. Some of the authorities state the proposition in its full breadth and without qualification, that the equities of third parties cannot be allowed to affect the assignee; and such authorities, holding this extreme, are combated by others. But I know of none that permit the equity of third persons to affect the assignee when such equity is not, or cannot be, connected with the instrument or debt assigned. The case in 61 N. Y. 122 (*Trustees Union College v. Wheeler*), is an exhaustive and leading one on this subject, and it upholds the doctrine that equities of third persons are available against the assignee; but in that case it is expressly said that the doctrine extends only "to all dealings and acts on the part of the assignor towards those persons whose rights and interest are *embraced within the mortgage.*" And

that it is not pretended that it will reach and protect those claiming " externally " to the mortgage. But the equities attempted to be set up by these plaintiffs are not such as are embraced within the mortgage; they are external to the mortgage; they are properly the equities of third parties against the mortgagee which have no relation or connection with the payor, since he merely quitclaimed or released whatever interest he had in the land covered by the mortgage. *It can make no possible difference to him what the result of the question may be*, for he has given no instrument which connects him with it in any way. The case in 22 N. Y. 548 (*Bush v. Lathrop*), was regarded as a strong one in support of the rule that equities of third parties would affect an assignee; but, even in that case, it was conceded that, if the third parties were those " who had dealt with the *original creditor*," their equities could not be set up against the assignee. The court said that " a purchaser (assignee) has no clue by which he can protect himself against the equities of (such) third persons." The same thing is held in *James v. Morey*, 2 Cow. 297. These considerations apply to the facts in the case at bar, and nothing in *Bush v. Lathrop*, applicable to the facts in this case, is against our position; whatever else appears in that case was overruled in *Moore v. Bank*, 55 N. Y. 41.

If Craig had retained the land it would unquestionably have been subject to the lien of the mortgage, for Craig could not, of course, claim that the note had been paid, or that the deed of trust was satisfied. So if Craig and his grantees, down to plaintiffs, had conveyed by quitclaim deeds the land would still have been liable to the lien of the deed of trust in the hands of either of them, for by holding under quitclaim deeds they could not claim to be innocent purchasers (*Hope v. Blair*, 105 Mo. 90), since the law does not require an

assignment of a note and mortgage to be recorded. Our registry statutes permit one without actual notice who purchases for value to rely wholly upon the deed records, and the records of such purchase will give him the title against all equities or incumbrances not disclosed by such records. Now, does this case properly fall under the principles governing the registry acts as they affect titles? I think it does not. *James v. Morey*, 2 Cow. 296. Here the assignee, as we have seen, took the title to the note upon the assignment and delivery to her. This carried with it the mortgage security. By no act which she could take, or which the law required her to take, could she notify the successive grantees of Craig, including these plaintiffs. If she had done all that plaintiffs contend she should have done, that is, have given notice of the assignment to Hall, he (Hall) and Craig could still have done just what they did do. In other words, notice to Hall, which would be merely a private communication, would not and could not be notice to the grantees of Craig. It is plain that it is utterly impossible for the assignee of a mortgage to know with whom the mortgagee may subsequently deal in relation to the mortgaged premises. And so it is, therefore, said in *James v. Morey*, 2 Cow. 298, that there is not a case to be found in the books in which the principle of the equity of third persons has been applied to dealings between the mortgagee and third persons *since the assignment*. It is true that it is said that Craig's grantees could ask Hall if he had paid the note, and that they actually did ask him; but this can have nothing to do with the registry act, nor can it in any possible way be notice to others. *James v. Morey*, 2 Cow. 311.

So I consider that the registry statute does not affect the case. And the question finally is, which of the parties have the better equity: The assignee for

value of a note who takes possession, but fails to give notice of the assignment to the debtor; or the grantees for value by warranty deed from the assignor of the land mortgaged to secure the note, such land having been quitclaimed to the assignor by the payor in payment of the note? There ought not to be any doubt that the assignee is in the better position. *First.* She has the prior right and title which cannot be taken from *her except by neglect of some duty owing by her to these grantees.* She owed them none. The only duty she owed at all was to the payor, and which, if performed as to him, would not necessarily have benefited these grantees. So conceding that Mrs. Eddy was put upon inquiry, by inquiring of Hall, the payor, what would she have learned? She would have learned that the discharge of Hall was by his releasing his equity of redemption to Craig, and this would not have altered the situation; for the mortgage would remain good in her hands against Craig. She would not have discovered anything which went to impair her security. *James v. Morey,* 2 Cow. 311.

By Hall releasing and quitclaiming the equity of redemption to Craig, the mortgagee, there was no merger of the two estates, as Craig, thus holding the two estates, had assigned his interest in one of them; equity would never permit a merger under such circumstances. 2 Washburn on Real Property, 564, sec. 1.

The fact, that Craig more than three years after he had assigned the note to Mrs. Eddy, and more than a year after the deeds of trust to Gilbert & Gay had been executed, made an entry of satisfaction of the Hall deed of trust on the margin of the record, can have no effect on the rights of the parties. *Rice v. McFarland, supra,* and authorities cited.

The judgment of the circuit court is affirmed. SMITH, P. J., concurs; GILL, J., dissents.

SMITH, P. J. (*concurring*).—I shall express as shortly as I can the view which I entertain in respect to the principal question which has been discussed in this case by each of my associates. It is a general principle that a quitclaim deed is notice of pre-existing equities. But it is not notice of such equities as are required by the statute to be registered; that is, spread upon the records, except where given for value. *Stoffen v. Schroeder*, 62 Mo. 147; *Stevens v. Hume*, 62 Mo. 473; *Mann v. Best*, 62 Mo. 401; *Ridgeway v. Holliday*, 57 Mo. 444; *Campbell v. Gas Co.*, 84 Mo. 352; *Fox v. Hale*, 74 Mo. 315; *Andrews v. McPike*, 86 Mo. 293; *Sharp v. Cheatham*, 88 Mo. 498; *Munson v. Eddy*, 94 Mo. 504. Manifestly, the transaction between Hall and Craig, by which the former discharged the note, was a fraud on the part of the latter as to Mrs. Eddy's rights.

The facts constituting Mrs. Eddy's equities in part were that she was the owner and holder of the note under an assignment from Craig at the time of the transaction between Hall and Craig, and that, owing to the nature of such equities, they could not be spread upon the records, and were not, for that reason, within the registration statutes. It is not controverted that, as between Mrs. Eddy, the assignee, and Craig, the assignor in equity, the note and deed of trust remained unaffected by the discharge of Hall. Craig was estopped as against Mrs. Eddy to set up his fraud in discharging Hall.

Bartlett holds by mesne conveyances under the quitclaim deed from Hall to Seals, and, according to the authorities just cited, the former acquired the land subject to the pre-existing equities of Mrs. Eddy. Bartlett occupies in respect to Mrs. Eddy's equities precisely the same position that Craig or Seals did. He took the land with notice of the equities of Mrs. Eddy

which suffered no impairment by the subsequent conveyances. Her equities are as available against Bartlett as they were against either Craig or Seals.

I, therefore, concur in the conclusion reached by Judge ELLISON.

GILL, J. (*dissenting*).—It seems the material facts of this controversy may be thus stated:   On December 1, 1885, Hall executed to Craig a non-negotiable note of $700, due two years from date, and, to secure the same, Hall made a deed of trust on eighty acres of land. About six weeks thereafter, Craig, for value, assigned the note and security to defendant Eddy, who then was a non-resident, and who never gave any notice of the assignment to Hall.   In October, 1887, Hall, believing Craig yet the owner of the note and mortgage, paid off the same by a reconveyance of the land to Craig (or rather to one Seals for Craig).   From Seals through several intermediate conveyances, the said eighty acres was purchased by and the title lodged in plaintiff Bartlett. The parties from whom Bartlett purchased the land had secured the same in entire good faith, and after being advised by Hall and by Craig that the old note and deed of trust of Hall to Craig had been fully satisfied. In making these representations Hall was entirely innocent, but the bad faith and villainy of Craig throughout the whole transaction is manifest.

The matter for determination then is, who of these parties must suffer; shall it be Eddy, the holder of the Hall note and mortgage, or shall it be Bartlett, the, in fact, good-faith purchaser?

I.   In this discussion let us assume this controversy to rest between Hall, the payor and mortgagor, and Eddy, the assignee thereof.   Hall, without notice of Eddy's purchaser, paid Craig and took from Craig an acknowledgment of satisfaction of the debt and

mortgage. Since the assigned note was non-negotiable, the rights of the assignee Eddy, as well as the rights of the debtor Hall, are to be measured by the rule for the assignment of any ordinary chose in action. Now it is well-settled law, that, until the debtor receive notice of the assignment he may safely pay the debt to the original holder. R. S. 1889, sec. 8161; 1 Parsons on Contracts, 227, 229, 230; 3 Wharton on Contracts, 838, 842, 845, and numerous other authorities that might be cited. The books uniformly say that the assignee of a chose in action, in the absence of notice to the debtor, stands in the shoes of the assignor, subject to the same defenses. It was formerly required that the suit should be brought in the name of the assignor for the benefit of the assignee. But that the assignee may now sue in his own name has not, in the least, deprived the debtor of his defenses. "The assignee is still subject to the same equities as before; that is, if the defendant can show that he, in good faith, paid the debt, or a part of it, to the assignor before the assignment, *or before he had any knowledge of the assignment*, the defense is as effectual as if the action were in the name of the assignor. And if, after the assignment, *and previous to such notice of it*, the debtor pays the debt to the assignor, he shall be discharged, because he shall not suffer by the negligence or fault of the assignee." 1 Parsons on Contracts, 350.

It is clear, then, if this was a suit on the debt by Eddy, the assignee, against Hall, the debtor, it would be a good defense that Hall, before the notice of the assignment, had paid Craig, the assignor. And it would seem equally manifest that such payment to Craig would, likewise, bar an action for the foreclosure of the mortgage. The debt and the mortgage are for this purpose, at least, inseparable. "When the note is

paid, the mortgage expires." 1 Jones on Mortgages, sec. 840; 2 Jones on Mortgages, sec. 1487; *Carpenter v. Logan*, 16 Wall. 275; *Hagerman v. Sutton*, 91 Mo. 531; *Johnson v. Johnson*, 81 Mo. 336.

II. But it is contended, on the faith of *Rice v. McFarland*, 34 Mo. App. 404, that the payment of the debt by Hall to Craig after the assignment to Eddy, but *before notice of such assignment*, was not, strictly speaking, a payment and satisfaction of the debt, but that the debt remained to support the mortgage security then in the hands of the assignee; that, while Eddy could not enforce the *note* against Hall (because of the payment to Craig before notice), yet that the mortgage security remained intact and enforceable in the hands of the assignee, Eddy. It seems to be the notion that from Hall's payment to Craig (when he thought and had the right to conclude Craig still the owner of the note and mortgage) a sort of undefined equity arose in Hall's favor, which would serve to defeat Eddy's action on the note, but would not destroy a right to enforce the mortgage. After a very thorough investigation and consideration of the authorities, I feel that we ought to recede from the position thus practically taken by us in the above-cited case. If, when Eddy took from Craig an assignment of the debt and mortgage, it was intended to deprive Craig of the power and authority to receive payment thereof, it was the duty of Eddy to give notice of the assignment to Hall, so that he would not be deceived into paying to the wrong party; and, until such notice was given (or Hall was in some way informed), he [Hall] was justified in regarding Craig still the owner, or as agent of the owner, and a payment by him under such circumstances was a payment to the agent of an undisclosed principal. 2 Wharton on Contracts, sec. 342. By taking an assignment of the debt and mortgage from Craig, but failing

to notify the debtor, Craig remained, under the law, the trustee or agent of the assignee to receive payment of the debt. And, when he received such payment from Hall, it was a complete and entire satisfaction of the debt to the same extent as if he had paid to Eddy direct. The object the law has in view in requiring the assignee of a chose in action to warn the debtor of his purchase is to protect the debtor from double payment. What protection would it be to the debtor, if after paying the mortgage debt to the assignor, he could be compelled to pay again on the mortgage? The very purpose of the law would be thereby nullified. The payment thus made by the unadvised debtor must of necessity result in the extinguishing of the debt. He *has paid the debt*, if not to the rightful owner, yet to the one authorized under the law to receive it. If Eddy did not intend to trust Craig with the collection of the debt from Hall, the way was plain; she should have notified Hall of her ownership. Failing in this, Hall could not suffer from her negligence. The debt then was *paid;* and, the debt being extinguished, the mortgage security on the land perished with it. In addition to the authorities, *supra,* see also *Hodgdon v. Nagler,* 5 Serg. & R. 217; *Bury v. Binkley,* 4 Serg. & R. 177; *Brindle v. McIlvaine,* 9 Serg. & R. 74; *VanKenren v. Corkins,* 66 N. Y. 77–80; *Trustees, etc., v. Wheeler,* 61 N. Y. 88–115; *Howard v. Gresham,* 27 Ga. 347–351; *Greene v. Warnick,* 64 N. Y. 220; *Miller v. Bomberger,* 76 Pa. St. 78.

III. The rule in this state that, though an action on the debt be barred by the statute of limitations, yet a suit on the mortgage may be maintained (*Wood v. Augustine,* 61 Mo. 51; *Booker v. Armstrong,* 93 Mo. 58) does not impair the position taken in this case. The barring of an action by the statute of limitation is not *payment of the debt.* It only affects the *remedy,* the

debt still remains. 2 Hill on Mortgages, sec. 29; 2 Jones on Mortgages, sec. 1203; *Thayer v. Mann*, 19 Pick. 535, 537.

IV. Some reference is made to section 2390 (R. S. 1889) as denying to Craig, before notice to Hall of the assignment, power to accept payment or satisfaction of the debt. Said section reads: " It shall not be in the power of the assignor of a demand, after the assignment, to release any part of it," etc. It would seem that this section of the statute was not intended to reach a case like this, where, though there was an assignment of the demand as between the assignor and assignee, yet it was not effective as against the debtor without notice. However, any doubt must be put at rest when section 8161, Revised Statutes, is considered. That statute reads: " In actions on assigned accounts and non-negotiable instruments, the defendant shall be allowed every just set-off or *other defense* which existed in his favor at *the time of his being notified of such assignment.* "

As opposed to this view some reference is made to the case of *Bates v. Martin* (3 Mo. 367) and *St. Louis Perp. Ins. Co. v. Cohen* (9 Mo. 421). These cases are correctly quoted as holding that payment of a non-negotiable note by the debtor to the payee, but after an assignment to a third party (of which the debtor had no notice), is no defense to the maker of the note in a suit by the assignee. But, as to what weight should be given these cases, it must be remembered that they were decided on the peculiar condition of the statute law at that time. The then statute law of Missouri in express words took the matter of assigned bonds and notes out of the general rule applicable to the assignment of other choses in action, and only left the obligor or maker the right to set up the defenses he had when *the assignment was made.* R. S. 1825, p. 143; R. S.

1835, p. 105; R. S. 1845, p. 190. But, incited thereto probably by these decisions, the common-law rule was soon thereafter restored by our law-makers; and the obligor or maker of an assigned non-negotiable note was permitted every set-off or other defense which he had *when he received notice* of the assignment. Acts, 1849, sec. 3, p. 75. This section first appeared in the act establishing our code of practice. It was then carried down into the revision of 1855, under title of "bonds, notes and accounts" (R. S. 1855, p. 322); and then in the revision of 1865 appears in the chapter on set-offs (Gen. Stat. 1865, p. 602), and is found in the present revision under the same title. R. S. 1889, sec. 8161.

As I read these cases and this legislation, the law, as it was under the old statutes, has been changed, and the common law as it was before the act of 1825 practically restored. And we have it now as expressed by Judge Scott in *Ins. Co. v. Cohen, supra* (9 Mo. 442): "As to choses in action or paper non-negotiable the assignee takes it subject to all the defenses the maker may have against it before notice of the assignment. To the assignee of the chose in action, the rule *caveat emptor* applies. * * * An assignment operates *per se* as an equitable transfer of the debt. Notice is indispensable to charge the debtor with the duty of payment to the assignee, so that if without due notice he pay the debt to the assignor he will be discharged from the debt." *Murdoch v. Finney*, 21 Mo. 139.

It, therefore, results from the foregoing considerations that Hall's payment to Craig had the effect not only to satisfy the debt, but as well to extinguish the mortgage security on the land now held by Bartlett. In thus deciding we are not forced to concede this defense as available to Craig, when he subsequently procured the title. For it may be well said that he,

because of his fraud, would be estopped to set up a discharge procured by his own bad faith. But, as to the subsequent purchasers of the land, who acted in entire good faith, and with knowledge of Hall's payment, etc., they occupy the same advantageous grounds, and are entitled to like consideration in law and equity as if the land yet remained with Hall.

In my opinion, then, the judgment, on the agreed statement of facts should have been for plaintiff, and not for defendants; and, therefore, I must dissent from the opinion of my associates.