### BALLINGER NATIONAL BANK V. JOHN BRYAN ET AL.

#### No. 1426.

**1. Mortgagee—Effect of His Purchase at Attachment Sale—Merger.**

Where the mortgagee of personal property purchases it at a sale by order of the court, as perishable property taken under attachment against the mortgagor by another creditor, his mortgage lien is not merged or lost thereby, but attaches to the proceeds of sale; and he may intervene in the suit and have them adjudged to him upon his mortgage. Following Betterton v. Eppstein, 78 Texas, 443.

**2. Mortgage—Description of Property.**

"All my sheep branded either 'S' or 'V,' consisting of about 1600 head of sheep," is a sufficient description, not void for uncertainty, and includes all the mortgagor's sheep in both brands.

**3. Same.**

Such description is not rendered indefinite by the introduction of evidence tending to show that six months prior to the date of such mortgage the mortgagor owned 2600 sheep in such brands.

**4. Mortgage—Evidence of Release.**

See opinion for evidence held not sufficient to authorize the court to submit to the jury the question whether a mortgagee had released any part of the security contained in his mortgage.

**5. Directing Verdict.**

Where the evidence is clear and uncontradicted, it is proper for the court to direct a verdict. See opinion for case where it was proper to direct the jury to award the property in controversy to an intervenor.

**6. Evidence—Bill of Exceptions.**

See opinion for errors in the admission of instrument in evidence not considered by the court because no bill of exceptions was found in the record.

**7. Evidence—Records—Original or Copy.**

In proving the judgment of another court, the original order may be used; since the statute (Rev. Stats., art. 2252) makes a certified copy admissible where the original record itself would be. See case for state of facts under which it was held immaterial whether judgment was properly admitted, since it would not have altered the result.

APPEAL from Runnels.     Tried below before Hon. J. O. WOODWARD.

The appellant bank brought this suit against Bryan on a promissory note, and attached certain sheep which, by order of the court, were sold,

as perishable property, and the proceeds paid to the clerk. Trammel & Co., the purchasers at this sale, intervened, claiming the proceeds under a mortgage of the sheep given by Bryan to secure a note to them. On the trial the court directed a verdict awarding the proceeds of the sale to intervenors and from this plaintiff appealed. Appellant's third bill of exceptions, referred to in the opinion of the court, shows that intervenors introduced in evidence, over appellant's objection, a deed of trust from Bryan to Connell to secure Scarbauer, made June 14, 1892, and describing among the mortgaged property 1500 sheep branded "V" on left hip, and 800 branded "J" on left side. The plaintiff then moved the court to exclude the mortgage from Bryan to secure intervenors previously introduced because it was shown by the last deed of trust and other evidence in the case, "That said John Bryan owned 1500 head of sheep branded 'V' and about 1100 branded 'S,' at the time of the said deed of trust to secure intervenors, and the description of the mortgage to intervenors becomes void on account of the description contained." This motion was overruled by the court.

*Guion & Truly,* for appellant.—1. A mortgagee extinguishes his mortgage by buying the property at a sale under execution at the suit of a third person subject to his own mortgage. He cannot afterwards maintain an action on the debt against the mortgagor; and his title as mortgagee is merged with his title as general owner. Jones on Chattel Mortgages (3 ed.), sec. 470; Merritt v. Niles, 25 Ill., 282.

2. A sale of property under an attachment as perishable vests the absolute title to the property in the purchaser. Betterton v. Eppstein, 14 S. W. Rep., 861.

3. A writ of execution is a judicial writ issuing out of the court containing the record or other judicial proceeding on which it is grounded, principally used for the purpose of carrying into effect a judgment or decree of the court. It is the embodied power of the court in the shape of a command to a ministerial officer respecting the rights of the parties to the judgment. In case of sale of perishable property levied on by attachment the sale must be made as sales of personal property under execution. Rev. Stats., arts. 171, 172, 173; 7 Am. & Eng. Encycl. Law, Title Execution, p. 118; Lockridge v. Baldwin, 20 Texas, 307; 1 White & W. C. C., sec. 882.

4. When the mortgagee buys and obtains the absolute title to the property, he certainly becomes the owner of it subject to no lien or incumbrance. There remains nothing for him to foreclose upon. By his own act he merges his lien into an absolute title. As against another person who might become the purchaser subsequent to the creation of his lien he could foreclose, making him a party to the suit, before the sale. It is only by virtue of a subsisting lien that he can intervene and claim the purchase money for the property sold as perishable. Betterton v. Eppstein, 14 S. W. Rep., 863.

5. The court erred in overruling plaintiff's motion to exclude the

instrument complained of in second assignment of error after it had been developed in evidence that John Bryan owned about 1100 head of sheep branded "S" and about 1500 head of sheep branded "V."

6. The court erred in refusing to give special charges containing the following propositions in substance: (1) That the burden of proof was upon the intervenors to show that the sheep described in their mortgage were the same sheep levied upon by the plaintiff's attachment, and that they were the same sheep sold under the order of this court. (2) That, if the jury believed that intervenors released any part of their security without the consent of plaintiff or other creditors of defendant, they would not be entitled to recover. (3) That the instrument introduced in evidence, termed a deed of trust, failed to describe the property therein with sufficient certainty to identify it. (4) That said instrument appearing to be improperly registered, it should not be considered by the jury.

*W. H. Cowan,* for appellees Trammell & Co.—1. At a sale of mortgaged property seized under a writ of attachment, the sale being made under order of the court as perishable property, and liable to waste and too expensive to keep during the pending of the suit, the mortgagee may become the purchaser of such property at such sale, and his mortgage lien follows and attaches to the proceeds of the sale, which are deposited in court, the same as if the property had been purchased by some third party. Betterton v. Eppstein, 78 Texas, 443.

2. The chattel mortgage from John Bryan to Thos. Trammell & Co., the intervenors in the court below, and appellees in this court, is not void for uncertainty in the description of the sheep therein mentioned. A description, as "all my sheep" in a certain brand, or brands, in a certain county, or counties, or state, is sufficient, and it may be shown by parol evidence what sheep the mortgagor owned in the locality named to enable parties interested to identify same. Cobbey on Chattel Mortgages, secs. 166, 170, 171, see also sec. 158 to 188 inclusive; Jones on Chattel Mortgages, secs. 53, 54, 55, 56, 64 and 65; Bank v. Bank, 84 Texas, 369; Bank v. Emery, 78 Texas, 504; Boykin v. Rosenfield, 69 Texas, 115; Am. & Eng. Encycl. Law, vol. 3, p. 180, and notes; 2 Waites Ac. and Def., p. 175, sec. 6; Scrafford v. Gibbons, 44 Kan., 533; Adams v. Hill, 10 Kan., 627.

3. The depositing with the clerk of the proper county of a chattel mortgage by the mortgagee, is all the law requires of him, and a certified copy of such mortgage so deposited, certified to by such clerk, is admissible in evidence without reference to what record book the clerk records it in. Cleveland v. Empire Mills, 25 S. W. Rep., 1055.

4. The certified copy of the chattel mortgage was admissible without proof of the execution of the original and without being filed with the papers of the case for three days and notice given to appellants, etc. Act March 13, 1891, 22 Leg., p. 38; Sayles Civ. Stats., Supl., art. 3190b, sec. 3.

5. The clerk's certificate of the registration of this mortgage taken. in connection with the endorsements made on the original, as shown by the certified copy, shows that it was not only deposited and filed with him, but that it was properly entered in the chattel mortgage register, at least it does not appear that this was not done, and the presumption of law is that the clerk performed his duty.

6. The mortgage from John Bryan to John Scharbauer does not show, or even tend to show, that the sheep mortgaged to Trammell & Co.,. were any part of the sheep mentioned in the Scharbauer mortgage.

7. It has been repeatedly held by the Supreme Court and the Courts. of Appeals in Texas, that when there is no conflict in the evidence a court may assume the facts thus established as proved, and in cases in which but one conclusion could be reached from the evidence, direct the jury in his charge to return a verdict for the party who has thus so conclusively established his case by the evidence. Rev. Stats., art. 4341;. Vickers v. Carnahan, 4 Texas Civ. App., 307.

8. When an execution or order of sale (the latter being in effect an execution) is issued from a court of record, properly tested under the official signature of the clerk and bearing the impress of the seal of the court, and has not been returned to and filed in the court as a part of the record thereof, or if its admission in evidence is only sought as a matter of inducement to the action, it may be proved by producing the original and, in either event, the original is admissible in evidence. 1 Greenl. Ev., sec. 521.

9. Where the illegal evidence admitted over objection is merely cumulative, the matter having been otherwise proven, it is not a material error requiring a reversal of the case. Railway v. Greathouse, 82; Texas, 108.

COLLARD, ASSOCIATE JUSTICE.—The Ballinger National Bank sued John Bryan on the following promissory note:

"Ballinger, Texas.	January 6, 1893.	Due Feb'y 6, '93.

One month after date, without grace, for value received, I promise to pay to the order of the Ballinger National Bank, Texas, twenty-seven hundred and ninety-one and 50-100 dollars, with interest at the rate of 10 per cent per annum from maturity until paid, and 10 per cent additional on amount of principal and interest unpaid for attorney's fees, if placed in the hands of an attorney for collection.

Signed, John Bryan."

The note had a credit endorsed thereon of $2000, paid February 6, 1893. The petition alleged that defendant Bryan was a resident of the county of Nolan, Texas, "but has lately left and may be found, if still in the State, in the county of Tom Green, Midland or Runnels, but his presence or whereabouts is unknown."

Plaintiff, on May 8, 1893, caused writ of attachment to be issued in the suit against John Bryan, directed to the sheriff of Runnels County, commanding him to seize and levy upon property of defendant John

Bryan, if found in the county, sufficient to make the sum of $802.45 and the probable costs of suit.

The sheriff executed and returned the writ on May 8, 1893, showing that he had attached by virtue of the writ "1169 head of sheep, a part of which was branded 'S' on side and a part of which was branded 'X' on the rump, levied on as the property of John Bryan." The affidavit and bond for attachment were of same date as the filing of the suit. Of the sheep levied on, 809 head were branded "S," and 350 head were branded "X." Those branded "X" were replevied by the Tucson Land and Live Stock Company, leaving only the 809 head, branded "S," in the hands of the sheriff by virtue of the attachment. These were sold by order of the court, as perishable property, to intervenors, Thos. Trammel & Co., and the proceeds of the sale, $1221.59, were deposited with the clerk of the court, except $127.28 retained by the sheriff for his costs. The court ordered the sheriff to turn all the proceeds of the sale over to the clerk.

When attached, the sheep were found just over the line in Runnels County, near the line of Tom Green County. March 13, 1894, Thos. Trammel & Co., bankers in Nolan County, by leave of the court intervened in the suit, claiming that they had a mortgage or deed of trust on the sheep sold by the sheriff, given by Bryan on December 5, 1892, to them, to secure a debt of Bryan to them of $2184.08, evidenced by his note of same date, which chattel mortgage or deed of trust, as is alleged, was duly registered in Nolan County, where Bryan then resided.

Petition of intervenors shows that they filed their suit in the District Court of Howard County against John Bryan on their note in 1893 and to foreclose their mortgage lien on the property described in the same, and on the 6th day of March, 1894, obtained judgment against Bryan on the note of $2702.80, with interest at ten per cent, foreclosing their lien on the sheep, and order of sale according to the tenor of the mortgage; that the cattle described in the mortgage and judgment, other than the sheep, were sold under the order of sale issued according to the judgment, and brought only the sum of $200, the costs of the suit being $24, leaving a large balance due on the judgment which has never been paid. They pray for judgment for said $1221.59, the proceeds of the sale of the sheep deposited with the clerk, and order to the clerk to pay the same to them, the intervenors. The intervenors were the purchasers of the sheep at the sale made under plaintiff's attachment.

Plaintiff read in evidence the note sued on and the attachment levy as before shown. Intervenors read in evidence their note and mortgage as set up by them, the mortgage reciting that John Bryan was a resident of Nolan County. It included certain cattle, in brands stated, and the sheep described as "all my sheep, branded either S or V, consisting of about 1600 head, which I agree shall be held in Nolan and adjoining counties, Texas, during the life of this mortgage." The mortgage was filed and deposited in the county clerk's office of Nolan County for registration on December 20, 1892, at 4:15 o'clock p. m., and according to

the certificate of the county clerk of Nolan County, as part of the orig-
inal from which the certified copy was made, "was duly recorded De-
cember 20, 1892, at 4:30 o'clock p. m. in the real estate mortgage records
of chattel mortgages, vol. 1, page 62." The original mortgage was duly
acknowledged by John Bryan, December 5, 1892. The certified copy was
made May —, 1893, at which time the county clerk certified that the
original was then on file in his office. It, the original, was on file in the
same office a few days before the trial of this case, and there is no testi-
mony tending to show that the original has ever been withdrawn from
the clerk's office where filed. This certified copy was sent up with the
transcript by order of the court, and will be found on page fifteen and
pages following of the transcript, with all certificates and acknowledg-
ments to which we refer. Intervenors also read in evidence their judg-
ment against John Bryan, of date March 6, 1894, for $2702.80, bearing
10 per cent interest per annum, and for costs of suit and foreclosure of
their chattel mortgage on the cattle and sheep as alleged by them, giving
the same description of the cattle and sheep as is given in the chattel
mortgage, the judgment ordering sale to any county in Texas where the
cattle and sheep might be found—the judgment being obtained upon
citation by publication, the plaintiff in this suit not being a party to
that suit and judgment—also order of sale on the judgment of date May
4, 1894, describing the cattle and sheep as in the mortgage, returnable
on October 1, 1894; also return of sheriff on the order of sale, showing
that he received it on May 10, 1894, and executed it by levying on the
cattle described, advertising sale by posting advertisements on May 23,.
1894, and selling same as required by law on June 5, 1894, to Thos.
Trammell & Co. for the sum of $200—the return does not show that it
was returned into the court that issued order of sale—also sheriff's bill
of costs for $11.25, attached to the return; also original receipt of Thos.
Trammel & Co., showing that they had received from the sheriff $175.20,
net proceeds of the sale, which receipt was also attached to the sheriff's
return. Intervenors also read in evidence the order of sale made in the
case at bar, commanding the sheriff to sell the attached sheep, issued
upon the ground that the sheep were badly diseased with scab, and were
daily depreciating in value, and were in serious danger of waste, and there
would be great expense in keeping them until the trial, the order being
made May 26, 1893, in chambers, by the district judge; return of sale,
showing the sale of 809 head of sheep on June 6, 1893, after due adver-
tisement, etc., to Thos. Trammell & Co., for $1221.59, which sum was
deposited with the clerk of the court; receipt of the sheriff to Thos.
Trammell & Co. dated June 3, 1893, for the $1221.59, and bill of sale
by the sheriff to them for the 809 head of sheep branded S.

The testimony shows without contradiction that the sheep mortgaged
to intervenors were in Nolan County when the mortgage was executed;.
that they were never taken from that county with the consent of inter-
venors; and that John Bryan, the mortgagor, was then residing in Nolan
County, where the mortgage, duly acknowledged by him, was filed and

deposited with the clerk of the county and entered of record as stated. The sheep attached by plaintiff are a part of the same identical sheep covered by intervenor's mortgage. D. P. Gay, the president of the Ballinger National Bank, plaintiff, directed the levy of the attachment, and at the time knew the mortgage of intervenors covered the sheep levied on. The sheep were in Nolan County on April 15, 1893, whence they were driven away to Tom Green County and were attached by plaintiff in Runnels County, as stated. An attorney of the court was appointed to represent Bryan who had been served by publication, and this attorney filed for him demurrers to the pleadings of plaintiff and intervenors and a general denial of all allegations made by them.

The court instructed the jury to return a verdict for plaintiff for the sum of $958.79 as against John Bryan, and for intervenors for $1221.59, the amount of money deposited with the clerk of the court as the proceeds of the sale of the sheep.

The jury returned verdict as directed. Intervenors filed motion to have error in the charge corrected, the court instructing to find for plaintiff for $958.79, instead of $1054.66, the correct amount, judgment was so rendered by agreement with defendants' attorney, to bear interest at ten per cent per annum; judgment was also rendered in favor of intervenors, that plaintiff take nothing by the levy of the attachment, declaring that intervenors had a superior lien on the sheep at the time of the levy for a greater amount than the money deposited with the clerk, which sum the clerk was ordered to deliver to intervenors. It was also adjudged that intervenors recover all costs of plaintiff except that of the motion and order of correction.

*Opinion.*—1. The evidence was not uncertain whether the sheep levied on were the same as those covered by intervenors' mortgage.

2. The superior right of intervenors was not invalidated or affected by their purchase of the sheep at the sale under plaintiff's attachment proceedings. The money for which the sheep sold represented them, and intervenors' superior rights were properly applied to the money proceeds of the sheep deposited in court. Betterton v. Eppstein, 78 Texas, 443. Question as to effect of intervenors' judgment in the other suit against John Bryan is not raised by appellant, as that the mortgage was merged in the judgment.

3. Intervenors' mortgage or deed of trust was not void for uncertainty of description. "All my sheep branded either S or V consisting of about 1600 head of sheep," is not indefinite; it includes all the mortgagor's sheep in both brands. It was not error to refuse to exclude the mortgage to intervenors by John Bryan, as stated in the sixth assignment of error, for reasons stated in the third bill of exceptions, or because of matters which appear in the third bill of exceptions. The third bill of exceptions relates to an instrument different from the one mentioned in the assignment, and there is nothing in the third bill of exceptions which shows error in admitting the mortgage to intervenors.

4. J. E. Bryan, a son of defendant John Bryan, testified that his father bought the sheep in the S and V brand from Seitz Brothers in 1892. "They were in Nolan County, Texas. I last saw the sheep in Nolan County; they were last in Nolan County, some time in the spring of 1893. I was not with the sheep at this time; do not know exactly when they were moved out of Nolan County. . . . There were about 1600 head of sheep in the S and V brand. . . . The sheep mentioned in the deed of trust from John Bryan to Trammell & Co. were attached down in Runnels County and were sold, and Thos. Trammell & Co. bought them in; do not know how many there were at this time. I do not know what ever became of all the sheep. I know more about the S and V sheep because they were more of the time in Nolan County and on the home ranch, while the others were elsewhere. . . . I was in Sweetwater, in Nolan County, Texas, on December 5, 1892; was going to school. I remember where I was and where the S and V sheep were on December 5, 1892, from the fact that my sister Mamie was 16 years old on December 2, 1892, and we had a birthday party two days after her birthday, or on December 4, 1892. I do not know exactly where the sheep were on said date, but do know that at said time they were in Nolan County, Texas."

John Logan testified that he knew John Bryan; began working for him in 1890 and continued with him till 1893, at the time the sheep in controversy were attached. On December 5, 1892, I was herding sheep for him in Nolan County, Texas. We had been in the northern part of that county with the sheep for some days, and were drifting to John Bryan's ranch about 20 miles south of Sweetwater. On December 5, we camped at a water tank about a mile from Sweetwater, and left there the next day on our way to the ranch, and reached the ranch about the 8th or 9th of December, 1892. There were about 3000 head of sheep in the bunch at the time we had them at the water tank. Of these there were about 900 head branded S, about 175 branded V that belonged to John Bryan. There were about 350 head branded X that belonged to Mr. Foster, or rather to the Tucson Land & Live Stock Co.; there were 200 head belonging to me that I bought from John Bryan the fall before. They were branded S with a dot, and the balance, about 1400, belonged to Mr. Ford, that were branded E I F connected. We remained at the ranch till about the 15th or 18th of December, when we started for San Angelo, Texas, where we arrived on January 1, 1893. We then drifted west about 60 miles to near big lake, and the sheep were held for three or four weeks there, and then returned to John Bryan's ranch in Nolan County. . . . We reached the ranch in Nolan County about the 15th of March, and left there again about the 15th or 18th of April. After shearing the sheep, I put the few sheep that had been in the V brand in the S brand; Bryan had instructed me to do this. There were but few in the V brand. We put the S brand on them as we sheared them. After shearing the sheep we brought them out about eight or nine miles this side of San Angelo, where I had them

when Mr. Gay came to our camp a day or two before he had them at-
tached. Mr. Gay came to the camp and told me that John Bryan had
skipped the country, and that he had a mortgage on these sheep and was
going to take them. He further told me that I would get nothing for
my work, so I told him if that was the case he could take the sheep. He
told me he would come back the next day and bring a Mr. Hockley to
take charge of the sheep. He did come back as he said on the following
day and Mr. Hockley with him, who took charge of the sheep and drove
them to this (Runnels) county. There were about 1115 or 1120 sheep
that were branded S, and 350 branded X. Those branded X belonged
to Tucson Land & Live Stock Co. and were afterwards replevied by that
company. I again saw all these sheep in two or three days after they
were taken charge of by Mr. Gay, and saw them just after they were at-
tached by the sheriff of Runnels County. They are the same identical
sheep that we had at the water tank in Nolan County about one mile
from Sweetwater on December 5, 1892. They were branded S and V.
I was never away from these sheep a single day from December 5, 1892,
up to the date that Mr. Gay came and took charge of them."

The witness again says that Mr. Ford, of Illinois, had about 1400 head
of sheep in the flock. . . . He also testified: "I told Mr. Gay, when
he came and told me that he had a mortgage on the sheep and was going
to take them and that Bryan had skipped the country, that I owned 200
head of the sheep in the bunch, that they were branded S, and that John
Bryan owed me for a year's work, amounting to $500. Mr. Gay told me
to take out 160 head of sheep and keep them on that debt, as I was en-
titled to pay for my work, and that there was plenty of sheep left in the
flock to satisfy the debt which the Ballinger National Bank had against
John Bryan. We then counted out the 160 head of sheep, and I put
my brand on them, which was S with a dot; that left me, with the two
hundred head I already owned, 360 head.

Mr. Durham came down from Sweetwater in the interest of inter-
venors Thos. Trammell & Co., and Mr. Gay told him about the 160
sheep which he had counted out for myself, and he told me to take all
of them to Sweetwater and we should see whether or not Trammell &
Co. would let me keep them. I took them up there and I talked with
Trammell & Co. about them. They never said whether or not I should
keep them, but I kept them and they never tried to take them from me
nor made any kick about it. I afterwards sold these sheep at $1.05 per
head. I think the reasonable market value of them at the time we
counted them out was $1.25 per head. The 200 head which I owned
were bought by me from Bryan in the fall of 1892, at which time I put
my brand on them. They had my brand on them on the 5th day of
December, 1892, and were not included in the mortgage to Trammell
& Co. made by John Bryan. . . . In the travels with these sheep
from the 5th of December to the time Mr. Gay took charge of them in
May, a few died, not a great many."

D. P. Gay, who was the president of the Ballinger National Bank, tes-

tified: "I saw these sheep on the 26th day of January, 1893, across the Concho river at San Angelo, and they were in charge of witness J. O. Logan. I again saw these sheep a day or two before they were attached in this case. At that time they were seven or eight miles this side of San Angelo. I think there were at that time about 1500 head in the flock. Mr. Logan told me that he claimed 200 head of them, and that Bryan was owing him for his work in taking care of the sheep, and I told him that as far as I was concerned he could cut out 160 head more; while I doubted his ability to hold them as against the mortgage on them, I advised him to try it. I had no authority to turn these sheep over to him, but as Bryan was owing him, and as there was plenty left to satisfy the Ballinger National Bank debt, I told him he could take them and I would attach the balance. He then cut out the 200 head which he claimed and the 160 head of the sheep, and I took charge of the others. There were in all about 1500 head of these sheep. He took 360 head and Mr. Foster, for Tucson Land & Live Stock Co., afterwards replevied 350 head, which he, at the last October term of this court in a suit to try the right of property, recovered. This left about 800 head branded S."

This being the state of the testimony, we do not think it authorized or required the court to instruct the jury at request of plaintiff that, if the evidence showed that "after intervenors accepted their deed of trust from defendant, they released any part of their security contained in their mortgage without the consent of plaintiff or other creditors of defendant, then and in such case they would not be entitled to recover of plaintiff for the value of the proceeds remaining of the property so mortgaged."

Plaintiff had consented to Logan's taking the sheep claimed by him, and 160 more to pay him what was due for his labor. Besides this, the charge would not declare the rights of the parties as to any release of part of the mortgaged property by intervenors before plaintiff's attachment levy. The sheep taken by Logan were not of sufficient value, in any event, if added to the proceeds of the sheep sold under the attachment proceedings, to satisfy intervenors' debt secured by mortgage on the sheep.

5. As before stated, it was correct practice under the evidence adduced to instruct the jury to find for the intervenors.

6. There is an assignment of error to the ruling of the court admitting in evidence the certified copy of intervenors' mortgage or deed of trust, declared on by them as the foundation of their claim. The assignment objects to the admissibility of the instrument, "because the original was not produced; because it is not shown to be a true copy; because, as a recorded instrument, it is not admissible, the certificate of record showing that it was recorded in the real estate records of chattel mortgages, and because void for want of description." We find no bill of exceptions in the record making any objection to the copy of the instrument. We are referred to page fifteen of the transcript for the bill

of exceptions, but upon examination we only find that the paper was offered in evidence with its authentication and certificate by intervenors, but there are no objections noted to its admissibility, and the supposed bill of exceptions is not signed by the trial judge. We believe the bill of exceptions was omitted in making up the transcript. The court ordered the paper sent up with the transcript for the inspection of this court, and it is probable that the clerk, in copying the bill, failed to finish it by referring to another part of the record while copying. At all events, there are no exceptions in the record before us to the ruling, and we cannot therefore revise the ruling of the court, as requested in the assignment.

As to the admissibility of certified copies of chattel mortgages, see Laws 1891, page 38, section 3, amendatory of the corresponding section of the law as found in the Revised Statutes, article 3190b, section 3.

7. We do not think the objections to the admission in evidence of the original order of sale from the District Court of Howard County with the return of the sheriff thereon, and the receipt attached thereto from intervenors to the sheriff should be sustained. The proposition of appellant is that an original record of another court of the State, not shown to come from the proper court, is not admissible in evidence. The question is, should a certified copy have been produced from the clerk of the District Court of Howard County? If a certified copy would have been admissible, the original would have been. The statute makes the certified copy admissible "where the records themselves would be admissible." Revised Statutes, article 2252.

If it be conceded that the order of sale with the returns thereon were not admissible and should have been excluded, there was no such error as should require a reversal of the judgment, because, if excluded, the same judgment would necessarily result and the same charge by the court would be called for.

The judgment of the lower court is affirmed.

*Affirmed.*

Delivered March 4, 1896.