THE CITY NATIONAL BANK, Respondent, v. GOOD-LOE-McCLELLAND COMMISSION COMPANY, Appellant.

**Kansas City Court of Appeals, March 3, 1902.**

1. **Chattel Mortgages:** DESCRIPTION: TOWNSHIP: JUDICIAL NOTICE. A court in passing upon the sufficiency of the description in a chattel mortgage may take judicial notice that a given township is not in a given county.

2. ———: ———: GEOGRAPHICAL LOCATION: SURPLUSAGE. In passing upon the sufficiency of a description in a chattel mortgage, the court will consider the whole instrument and may reject the geographical location of the property as surplusage.

3. ———: ———: INQUIRY NOTICE. The description in a chattel mortgage is sufficient when strangers, aided by the inquiries it suggests, can identify the property, and a subsequent purchaser is bound to make such inquiry; but one claiming under the mortgage should make it appear in order to charge such purchaser with constructive notice that the description is not so inexplicit that reasonble care would have failed to show the property included in his mortgage.

4. ———: ———: SUFFICIENCY OF. A description set out in the opinion, though assailed on several grounds, is held sufficient. Cases considered and distinguished.

5. Bills and Notes: NEGOTIABILITY: EXTENSIONS. A note contained the words: "The makers and indorsers agree to all extensions and partial payments before or after maturity without prejudice to the holder." *Held*, the provision did not destroy its negotiability. (Cases considered and distinguished.)

6. ———: ———: DEBT: SECURITY: MORTGAGE. A mortgage is a mere security creating a lien upon property, the debt being the principal thing and the provisions of the mortgage may not render the note evidencing the debt non-negotiable.

7. ———: MORTGAGE: PAYMENT: AGENT. A debtor who pays to an agent does so at his peril and must secure the surrender of the obligation or show such agent's authority to receive payment without possessing the instrument; and a mortgage considered in the opinion did not authorize one of the defendants to receive payment of the note.

8. ———: PAYMENT BEFORE MATURITY: AGENT. Authority to receive payment as agent does not carry with it authority to mature immature paper.

9. ———: PAYMENT: EQUITIES. On the facts in the record it is held that payment to the defendant corporation was not a discharge of the debt and raised no equities in favor of the payor, who, dealing with the corporation as the owner of the securities, can not justify later on the ground that it was an ostensible agent.

10. Conversion: POSSESSION OF MORTGAGED PROPERTY: SALES: PROCEEDS. Where one sells mortgaged property, though not in possession, and receives and disburses the proceeds, he is liable for the value of the property.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover,* Judge.

AFFIRMED.

*H. M. Pollard* for appellant.

(1) The mortgage does not sufficiently or truly describe or locate the cattle appellant is sued for. (2) The note and the mortgage on which plaintiff relies are non-negotiable. (3) The mortgage authorized Noble to sell the mortgaged property, and it makes him the mortgagee's agent to do so, and the proof shows that it was his habit, known to the mortgagee, to do so. (4) The mortgage specifically declares that it is given to secure not only the note specified, but any indebtedness to Goodloe, and the proof shows there is other large indebtedness to him, and the mortgage further provides that in the absence of any express agreement between Goodloe and any assignee or transferee of the said note or any of said indebtedness, such transfer shall not carry with it the sole right to enforce this mortgage, but that the same should be vested in said Goodloe concurrently with the assignee or transferee of said note, and there was no such (or in fact, any) agreement shown.

*Milton Moore, Stewart Taylor* and *J. D. McCue* for respondent.

(1) The rule in Kansas, as well as in Missouri, is that if a person can, at the time the mortgage is made and placed of record in the proper county, by its aid and such inquiries as are suggested by it, ascertain the cattle intended to be conveyed, the instrument is effectual. Waggoner v. Oursler, 54 Kan. 141; King v. Aultman, 24 Kan. 246; Corbin v. Kincaid, 33 Kan. 649; Schmidt v. Bender, 39 Kan. 437; Scraf-

ford v. Gibbon, 44 Kan. 533; Bank v. Shackelford, 67 Mo. App. 475; Campbell v. Allen, 38 Mo. App. 27; Alferitz v. Ingalls, 83 Fed. Rep. 964; Banking Co. v. Commission Co., 80 Mo. App. 438; Yant v. Harvey, 55 Ia. 421; Smith & Co. v. McLean, 24 Iowa 322; Harris v. Kenneday, 48 Wis. 500; Talbert v. Horton, 33 Minn. 104; King v. Aultman, 24 Kan. 246, and cases cited; Ballinger Nat'l Bank v. Bryan, 12 Tex. Civ. App. 623; 34 S. W. 451; Bank v. Bank, 84 Tex. 369; Waggoner v. Oursler, 54 Kan. 141; Com. Co. v. Turner, 56 Kan. 778; Williams v. Cook, 63 Miss. 9; Love v. Putnam, 41 Neb. 86; Kenyon v. Framel, 71 Iowa 693; Spalding v. Mosier, 57 Ills. 148; Accountant Sup. Court of F. v. Marcon, 30 Ont. Rep. 135; King v. Howell, 94 Iowa 208. (2)   A strong point in the case is that the steers were described in the mortgage as being in the possession of Noble in Butler county, Kansas.   The proof sustains the statement. Harris v. Allen, 104 N. C.; Lightle v. Castleman, 52 Ark. 278; Baldwin v. Boyce, 152 Ind. 46; Estes v. Springer, 47 Mo. App. 99; Adamson v. Horton, 42 Minn. 161; Brown v. Holmes, 13 Kans. 482.   (3)   The note was negotiable. Jacobs v. Gibson, 77 Mo. App. 244-9; Killam v. Schoeps, 26 Kan. 310; Stillwell v. Craig, 58 Mo. 24; Chicago Equipment Co. v. Bank, 136 U. S. 268; Hope v. Barker, 112 Mo. 338. (4)   The note is not controlled by the terms of the mortgage except as to enforcing the security.   Owings v. McKenzie, 133 Mo. 323.   (5)   A sale of the note and mortgage terminated the right of the mortgagee to exercise any control over the property described or any interest in it.   Bank v. Grewne, 84 Mo. 477; Hagerman v. Sutton, 91 Mo. 531; Carpenter v. Longran, 16 Wall. 271; The Campbell P. Co. v. Roeder, 44 Mo. App. 324; Ketcham v. Com. Co., 57 Kans. 773; Kavanaugh v. Broadball, 40 Neb. 875; Martindale v. Burch, 57 Iowa 291.

SMITH, P. J.—The plaintiff is a banking institution incorporated under the national banking laws. The defendant, the Goodloe-McClelland Commission Company, is a business company incorporated under the laws of this State. The defendant, Arthur G. Godair, is a member of a co-partnership doing business under the name of the Godair Commission Company at East St. Louis, in the State of Illinois. This is an action brought by plaintiff against defendants to recover the value of eighty-five head of steers alleged to have been unlawfully converted by the latter to their own use. The plaintiff had judgment in the court below, and defendants appealed.

The case may be briefly stated in about this way, *videlicet*: That on the twenty-ninth day of May, 1900, one Noble executed to the defendant, the Goodloe-McClelland Commission Company, which we shall for brevity refer to as the Goodloe company, his promissory note for $7,433.88, due one hundred and eighty-two days after date, and to secure which he two days thereafter executed a mortgage covering several hundred head of cattle which were located in Butler county in the State of Kansas; that before the maturity of said promissory note the plaintiff, through several successive indorsements, became the owner thereof for value; that said mortgage was executed in the State of Kansas and on June 1, 1900, it was filed and recorded in the office of the recorder of Butler county in that State; that on or about October 16, 1900, the said Noble shipped said cattle to the National Stock Yards, East St. Louis, consigning them to the Goodloe company, where at the request of said Noble they were sold by the defendant Godair and the proceeds thereof sent to said Goodloe company, which company appropriated such proceeds to its own use and then became defunct. The defendant by his appeal has raised and brought before us for review a number of questions which we shall proceed to consider in the order following:

I.   He objects that the trial court erred in permitting the plaintiff to read in evidence the mortgage, for the reason that it contains no valid description of the property intended to be thereby conveyed.   The mortgage description is in these words and figures: "the following described personal property . . . situate in the county of Butler and State of Kansas, to-wit:   Two hundred and forty head of steers of which 125 head are high-grade natives, three years old this spring; cash value at least $40 per head; 85 head are good grade western three and four-year-old steers this spring, branded thus, "W," on right hip, nearly all four years old; cash value at least $35 per head.   Thirty head of good grade northern Oklahoma two-year-old steers; cash value at least $30 per head.   The 125 head of three-year-old native steers are located on the east one-half of section 28, township 29, range 7.   The 85 head of three and four-year-old western steers and 30 head of two-year-old northern Oklahoma steers are located on the south half of section 22, and all of section 27, in township 20, range 7; both pastures in state and county aforesaid . . .   The above-described steers have been highly fed on corn and coarse feed all winter and are now in good flesh, and being all the property of the above description owned or controlled by the mortgagor now on said premises, and this mortgage is intended to cover and include all of said property of the above description."   The trial court was thus requested to declare as a matter of law that the description of the property intended to be covered by the mortgage was invalid on its face.

It is suggested that the description disclosed that the 85 head of cattle in controversy were located in sections 22 and 27, in township 20, range 7, in Butler county, and that there is no such township in Butler county, it being in Kingman county.   Courts will take judicial notice of the boundary lines of a county and will doubtless take notice of the fact that a township in a certain range is not within the boundaries of

that county. Woods v. Henry, 55 Mo. 560. It is, however, a conceded fact that said township 20 is not in Butler county.

The geographical location of personal property at the date of. the execution of a mortgage thereon is not a necessary part of the description of the property itself (Spaulding v. Mozier, 57 Ill. 148), and may be rejected as surplusage. In construing deeds and other like instruments, the rule is that we must look at the whole instrument to ascertain their true meaning and intent. An inspection of the whole mortgage, in which is the description now under consideration, will conclusively show that the property was located in Butler county in a pasture, then under the control and in the possession of the mortgagor. The number of the township specified in the description must be stricken out and disregarded, after which if enough remains to enable third persons, aided by the inquiries it suggests, to identify the property, that is all that is required to constitute a valid description. It is essential to the validity of a chattel mortgage that there be certainty in the description of the property conveyed by it, but *id certum est quod certum reddi potest.*

If from the description contained in such an instrument the mind is directed to evidence by which it may ascertain the particular property conveyed, if thereby absolute certainty may be attained, such instrument is valid, or, in other words, if the description will enable third persons, aided by the inquiries it suggests, to identify the property, it is sufficient. This rule has been fully established by a long line of adjudicated cases, both in. Kansas and this State. Waggoner v. Oursler, 54 Kan. 141; King v. Aultman, 24 Kan. 246; Corbin v. Kincaid, 33 Kan. 649; Schmidt v. Bender, 39 Kan. 437; Scrafford v. Gibbon, 44 Kan. 533; Bank v. Shackelford, 67 Mo. App. 475; Campbell v. Allen, 38 Mo. 28; Banking Co. v. Commission Co., 80 Mo. App. 438. And so it has been held in some jurisdictions that where the description is correct

Vol 93, app—9.

as far as it goes, but fails to point out and identify the property intended to be conveyed, a subsequent purchaser or incumbrancer is bound to make every inquiry which the instrument itself could reasonably be deemed to suggest. And that it is incumbent on one claiming under such an instrument, in order to.charge a subsequent purchaser or incumbrancer with constructive notice, to show that the description and means of identification afforded by such instrument are not so inexplicit that had the latter exercised reasonable care at the time he became such purchaser or incumbrancer, he could not have failed to discover the property was included in the instrument. Yant v. Harvey, 55 Iowa 421; Smith & Co. v. McLean, 24 Iowa 322; Harris v. Kenneday, 48 Wis. 500; Talbert v. Horton, 33 Minn. 104.

The description in question recited the name of the owner of the cattle, in whose possession, the number, sex, ages, kind or grades, and the name of the county in which the pasture containing such cattle was located, and this, it seems to us, was sufficient, without more. With the sections and township eliminated from the description it is clear to us that the description remaining is such that any one with it and such inquiries as it suggested could have ascertained the whereabouts of the pastures in which the cattle therein described were located. Baldwin v. Boyce, 152 Ind. 46.

This description was not wanting in certainty or calculated in any way to mislead. Kenyon v. Tramel, 71 Iowa 693; King v. Howell, 94 Iowa 208; Spalding v. Mozier, 57 Ill. 148; Love v. Putnam, 41 Neb. 86.

The defendant insists that as the evidence shows without contradiction that the cattle which he sold at the request of the mortgagor were branded on the left hip with the letter "W," while the 85 head described in the mortgage were branded with that letter on the right hip, that therefore there was such a fatal variance in the description as to destroy the identity of the cattle. A brand or mark on stock of any kind is only one

of the means employed for the identification of it. Even if a brand specified in the description is different from that on the animals, as disclosed by extrinsic evidence, still if the animals can, notwithstanding this, be identified by the other descriptive terms contained in the mortgage, together with the inquiries it suggests, we see no reason why such a mortgage should not be upheld as valid. It does not appear from the evidence that the mortgagor owned or had in his possession any other western steers, two and three years old, branded with "W" on the left side in a pasture controlled by him in Butler county or elsewhere. Neither did the erroneous part of the description apply to any other cattle, nor did the part that was correct apply to any other cattle, and taking the whole description together, it did not apply to any other cattle, so that no one could be misled by the description. King v. Aultman, 24 Kan. 246; Ballinger v. Bryan, 12 Tex. Civ. App. 673; Bank v. Bank, 84 Tex. 369.

The mortgage here recited that the mortgagor was not only in possession at the time it was executed, but was to remain in possession until default. This recital coupled with the others as to the kind, or grade, ages, and the county where the pasture was located in which they then were located afforded a description sufficiently definite and certain to charge third persons with notice. Estes v. Springer, 47 Mo. App. 99; Adamson v. Horton, 42 Minn. 161; Lightle v. Castleman, 52 Ark. 278; Harris v. Allen, 104 N. C. 86; Brown v. Holmes, 13 Kan. 482; Herman on Chat. Mort., 75; Jones on Chat. Mort., 65.

Parol evidence may be employed not to furnish a description, but to aid, if possible, the description given in the mortgage in the identification of the mortgaged property. The mortgage here gives the age, sex, kind or grade, ownership and county where located. By going to Butler county and there making inquiries, the location of the mortgagor's pastures could have been ascertained. And by further inquiry the

pasture in which the 85 head of western steers, two and three years old, in the possession of the mortgagor and which had been fed by him during the previous winter, could have been found. In this way there could have been little or no difficulty in ascertaining the cattle described in the mortgage. Waggoner v. Oursler, 54 Kan. 141. The evidence tended to prove that 85 head of cattle, corresponding in the description to that in the mortgage, except that the "W" was branded on the left instead of the right side, were taken by the mortgagor out of the pasture in Butler county in which they had been kept since some time before the date of the mortgage, and shipped to where they were sold by the defendant, Godair. The mortgage description, aided by the extrinsic evidence, was, we think, sufficient to justify the jury in concluding as it did that the cattle sold by the defendant were those included in the mortgage.

Furniture Co. v. Davis, 76 Mo. App. 512, cited and relied on by defendant, we think inapplicable, for in that case the property was simply described as being located in a certain county when such was not the fact. It was not stated in whose possession, nor was any other fact stated affording a means of identification. The case was correctly decided, but is no way analogous in its facts to this. Cattle Co. v. Bilby, 37 Mo. App. 43, was where the description was (—) on left side and Z on both hips. It was held that cattle branded with the (—) on the left side without the Z on both hips, were not covered by a mortgage containing this former description. The means of identification afforded by the description in this case are not the same as those in that case, so that the two cases are to be distinguished. In Stonebraker v. Ford, 81 Mo. 532, the description in the mortgage was "forty head of cattle of different ages and sexes mostly thoroughbreds" on the mortgagor's farm in Pike county. The mortgagor had forty-five or forty-six head of cattle on his farm at the time he executed the mortgage. The suit was for "sixteen head of

thoroughbred cattle." The court said that "had these been all the cattle on the farm of mixed breeds, or had there been only sixteen head of thoroughbred cattle when the mortgage was given, the description would have been clear enough for identification. But what is there in the mortgage to distinguish the forty head in the lot of forty-five or forty-six. The description applied to one head of the cattle as well as another." This case, though standing at the head of the long line of cases cited by defendant to sustain his assault on the validity of the description in the mortgage here, is manifestly not in point.

In view of the principles announced by the authorities to which we have already referred, we think the mortgage under which plaintiff bases its claim to the cattle described in the petition, is impregnable to assault on any one of the grounds urged by the defendant.

II. The defendant further contends that since the note described in the mortgage contains the words: "The makers and indorsers agree to all extensions and partial payments before or after maturity without prejudice to the holder," it with the mortgage are non-negotiable. The note, according to its terms, amounted to no more than an agreement that in the event of an extension of time the holder should not be prejudiced thereby. Under this agreement the holder was given the option to extend the time of payment without thereby creating the right to defend on that ground. In the exercise of the option, the holder would still retain the right to fix a time when the note should become due. In Bank v. Skeen, 101 Mo. 683, it was held that the words "on or before" were not destructive of the negotiable character of the note and that the certainty of ultimate payment should not be considered impaired by the intervention of an option in favor of the maker to discharge his obligation at an earlier time. The court there say that such a note is not "more uncertain for practical purposes than a bill drawn, for

example, 'at sight,' or 'on demand,' neither of which phrases has ever been held to diminish negotiability. Yet, with regard to bills so drawn, the holder exercises the unquestioned option of fixing the time when the direction to pay becomes absolute." In Stillwell v. Craig, 58 Mo. 24, the note was payable in installments not to exceed ten per cent on each share at thirty days notice. The court, in substance, held that since it (the note) expressed to be for value received, it fully met the statutory requisites of negotiable paper. And further, that it was not lacking in either of the two essentials to make it a promissory note, viz., as to amount and as to time of payment; that the amount must appear with absolute certainty and could not be left to depend upon unsettled contingencies, but as to time the law was not so exacting. Contingencies in this particular must be exceedingly remote in order to vitiate the paper for negotiable capacity. In the element of certainty, there was no difference between such a note and one payable on demand.

In Jacobs v. Gibson, 77 Mo. App. 244, it was ruled that the indorsement after maturity of a note where the signers and indorsers each waived protest and "agreed that the time may be extended without notice" did not accomplish the destruction of the negotiability of such note. Fogg v. School District, 75 Mo. App. 159, related to 5-20 bonds due in thirty years after date of issue with an option therein to pay at any time after five years. In the course of the opinion it is said that the negotiability of the bonds are drawn in question on the ground that the time of payment is not certain, the same being payable at the maker's option at any time after five years. This contention is based on Chouteau v. Allen, 70 Mo. 290. But the force of this decision has been broken by that in Bank v. Skeen, 101 Mo. 683, where it was said: "Having in view the reasons on which these rules [concerning negotiability] are founded, it would seem obvious that a certainty of ultimate payment should not be considered impaired by the inter-

vention of an option in favor of the maker to discharge his obligation at an earlier time.   The paper still retains a fixed date when the promise to pay will be performed."   Under this decision, the point made here must be ruled against the defendant.

There are numerous other cases in this State which hold that a note is non-negotiable where, by its terms, it is made uncertain as to amount or time of payment, or, when the sum stated is connected with an indefinite or uncertain sum.   Bank v. Gay, 63 Mo. 33; Samstag v. Conley, 64 Mo. 476; Bank v. Marlow, 71 Mo. 618; McCoy v. Green, 83 Mo. 626.

In Clark v. Skeen, 61 Kansas 526, the note itself contained, in addition to a provision for increased rate of interest from date, if either principal or interest remain unpaid ten days, this clause:   "At the option of the legal holder, if any of said interest notes remain unpaid ten days, the whole of the principal and interest may be declared immediately due and payable."   In the opinion of the court in the case it was said:   "The negotiability of the paper appears to have been challenged on two counts, first, that it contains a stipulation that upon default in the payment of interest the whole amount shall then become due and then draw a greater rate of interest. Stipulations like these are not inconsistent with negotiability. According to mercantile law negotiable paper is required to be certain as to time and amount but the note in question as will be observed, fixes a certain time for payment and the fact that it may become due at an earlier time depends upon the maker himself.   Stipulations somewhat similar were contained in the notes and mortgages under consideration in Holden v. Clark, 16 Kansas 346, and yet it was held that the paper was negotiable and that an innocent and bona fide purchaser took the same freed from the equities existing between the original parties."

It is conceded that the note here would be negotiable were it not for the clause therein relating to extensions.   The

amount of the note meets fully the requirement of certainty. And the time of payment, which is 182 days after date, is certain, but if the holder exercise his option under the extension clause and fix another time, that time would be none the less certain. In legal effect we can not discover that the agreement contained in the extension clause is different from that in a bill of exchange or promissory note which is made payable "at sight" or "on demand" or "on or before." And if this conclusion be correct then according to the authorities to which we have referred, the negotiability of the note here can not be impaired by the intervention of the option in favor of the holder to extend, without prejudice, the time of payment to another time to be fixed by him. The defendant has cited us to a number of authorities which are perhaps at variance with those referred to by us, but however this may be, we feel constrained to follow the latter.

III. The defendant further contends that the note and mortgage must be construed together as one instrument, and that the conditions set forth in the latter render the former non-negotiable. But this contention we are unable to concede to the defendant. The cases of Brownlee v. Arnold, 60 Mo. 79; Waples v. Jones, 62 Mo. 443; and Noell v. Gaines, 68 Mo. 649, were expressly overruled by Owings v. McKinzie, 133 Mo. 323, so that the law now prevailing in this State is to the effect that a mortgage is a mere security creating a lien upon the property. The debt secured by the mortgage is the principal thing, and the mortgage the mere incident following the debt wherever it goes and deriving its character from the instrument which evidences the debt. McMillan v. Grayston, 83 Mo. App. 425; dissenting opinion in Noell v. Gaines, 68 Mo. 649. And the Kansas cases show that a like rule prevails in that State. Swenson v. Plow Co., 14 Kan. 387; Burhans v. Hutcheson, 25 Kan. 625; Lewis v. Kirk, 28 Kan. 497; Wilson v. Campbell, 68 N. W. 278; Brooke v. Struthers, 68 N. W. 272. It has been fully recognized by the Supreme

Court of the United States. Railway v. Bank, 136 U. S. 282.

IV. The mortgage neither expressly nor by necessary implication authorized the Goodloe company to receive payment for the cattle after the transfer of the note, and therefore the payment, under such circumstances, to that company by the defendant Godair was at his risk. There is nowhere in the record anything which tends to prove that the Goodloe company had express authority to receive the payment made. Nor does it appear that the Goodloe company had the control or possession of the note and mortgage after the transfer to the plaintiff's assignor. It is a well-settled general rule that if a debtor owing money on a written security pays or settles with another as agent, it is his duty, at his peril, to see that the person thus paid or settled with is in possession of the security. If not thus in his possession, the debtor must show that the person to whom he pays or with whom he settles, has special authority or has been represented by the creditor to have such authority although for some reason not in possession of such security. Cummings v. Hurd, 49 Mo. App. 139, and authorities there cited.

At the time of making the payment the defendant Godair knew, or was charged with knowledge, that the note was not due. If he made the payment to the Goodloe company as the agent of the holder, he knew that that company could not receive payment of an immature debt without some special authority therefor. Authority to receive payment as agent does not carry with it authority to mature immature paper. Campbell v. Hassell, 1 Stark 185; Parnther v. Gaitskell, 13 East 218.

And the transmission of the proceeds of the sale of the cattle to the Goodloe company did not operate as a payment or discharge of the debt in the hands of the plaintiff, nor does such payment afford any equities available in favor of the defendant Godair. Bartlett v. Eddy, 49 Mo. App. 32; Rice

v. McFarland, 34 Mo. App. 404.   And the defendant Godair having dealt with the Goodloe company solely as the actual owner of the security, he can not now justify payment on the ground that the latter was an ostensible agent of the purchaser.   Hollinshead v. Globe Co., 42 L. R. A. 659; Murphy v. Barnard, 162 Mass. 72.

It was not necessary that the defendants, or either of them, should have had the complete manual possession of the cattle to make them liable in an action of this kind. The sale, receipt and disbursement of the proceeds in the manner stated, was sufficient for that purpose.   Bank v. Cassidy, 71 Mo. App. 186; Bank v. Metcalf, 40 Mo. App. 494.

It seems, from the instructions given and refused by the trial court, that it took the view of the case which we have hereinbefore expressed, and, therefore, no fault is to be found with it for its action in that regard.

It results that the judgment must be affirmed.   All concur.