E. F. SWINNEY, Plaintiff, v. MERCHANT'S BANK of Kansas City, Kansas, Appellant; WAKE-FIELD STATE BANK of Morenci, Michigan, Respondent.

Kansas City Court of Appeals, June 2, 1902.

1. **Chattel Mortgages:** DESCRIPTION: SURPLUSAGE: AGE. A portion of a description in a mortgage which is erroneous may be rejected if the remainder is sufficient to pass the property, and age is immaterial if the description is otherwise correct.

2. ———: ———: AGE: LOCATION. Where the description is uncertain as to age, marks and brands, but the location is definite, the latter may fix the lien of the mortgage and put other parties upon inquiry.

3. ———: ———: EXPLICIT: INQUIRY. In order to charge a subsequent incumbrancer with constructive notice, the description should be so explicit that he with reasonable inquiry can not fail to discover that the property was included in the mortgage.

4. ———: ———: AGE: LOCATION. A mortgage with other description described the heifers as coming three-year-old and as all the heifers on the mortgagor's farm. A subsequent mortgage differed in description only as heifers coming two-year-old and all the heifers located on the same farm. *Held,* the description in the first mortgage was sufficient to put the subsequent mortgagee on inquiry which would have shown the heifers were included in the first mortgage.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover,* Judge.

REVERSED AND REMANDED.

*Miller, Buchan & Morris* and *Gage, Ladd & Small* for appellant.

(1) The age of the cattle named in the mortgage is no material part of the description and should be re-

jected or disregarded, as an entirely erroneous addition to the part of the description which controls. It is merely an erroneous designation which does not impair the validity or lien of the mortgage. Jones on Chattel Mortgages (3 Ed.), par. 61; Barse Live Stock Com. Co. v. Turner, 56 Kas. 778, 44 Pac. 987; Peters v. Parsons, 18 Neb. 191; Bank v. Koechel, 8 S. Dak. 391, 66 N. W. 933; Evans, Snyder Buel Co. v. Turner, 143 Mo. 638; Estes v. Springer, 47 Mo. App. 99; Homes v. Com. Co., 81 Mo. App. 97; Harris v. Kennedy, 46 Wis. 500; Adamson v. Fagan, 44 Minn. 489; Hall v. Young, 87 N. C. 291; Harris v. Woodward, 96 N. C. 232; Norfolk Bank v. Wood, 33 Neb. 113; Wood v. Henry, 55 Mo. 560; Waggoner v. Oursler, 54 Kan. 141; King v. Aultman, 24 Kan. 246; Corbin v. Kincaid, 33 Kan. 649; Schmidt v. Bender, 39 Kan. 437; Scrafford v. Gibbon, 44 Kan. 533; Bank v. Shackelford, 67 Mo. App. 475; Campbell v. Allen, 38 Mo. App. 27; Bank Co. v. Com. Co., 80 Mo. App. 438; Yant v. Harvey, 55 Iowa 421; Smith & Co. v. McLean, 24 Iowa 322; Harris v. Kenneday, 48 Wis. 500; Talbert v. Horton, 33 Minn. 104; Baldwin v. Boyce, 152 Ind. 46; Kenyon v. Tramel, 71 Iowa 693; King v. Howell, 94 Iowa 208; Spalding v. Mozier, 57 Ill. 148; Love v. Putnam, 41 Neb. 86; King v. Aultman, 24 Kan. 246; Ballinger v. Bryan, 12 Tex. Civ. App. 673; Bank v. Bank, 84 Tex. 369; Estes v. Springer, 47 Mo. App. 99; Adamson v. Horton, 42 Minn. 161; Lightle v. Castleman, 52 Ark. 278; Harris v. Allen, 104 N. C. 87; Brown v. Holmes, 13 Kan. 482; Herman on Chat. Mort., 75; Jones on Chat. Mort., 65.

*Elijah Robinson* for respondent.

(1) The purpose of the law in requiring a mortgage to be recorded is to give notice to third persons of the existence of the lien created by the mortgage, and, as said by the Court of Appeals in Mayer v. Keath,

55 Mo. App. 161: "The mortgage on its face must give notice to third parties of the property conveyed, or else great fraud will be accomplished." Cattle Company v. Bilby, 37 Mo. App. 43; Mackey v. Jenkins, 62 Mo. App. 622; Furniture Company v. Davis, 76 Mo. App. 515; Hunter v. Arnett, 51 Ill. 198.

SMITH, P. J.—The plaintiff in his petition, which was in the nature of a bill of interpleader, alleged that he had in his possession and under his control a certain promissory note given to him by one Cantelow for $3,895.15, and that said note represented the proceeds of the sale of certain cattle sold to said Cantelow by the consent of both of the defendants; that prior to the sale of said cattle, each of said defendants claimed to have some sort of a lien thereon, and that each of them claimed the said proceeds of sale. The petition contained a further allegation offering to bring the said note into court, united with a prayer that each of the defendants be required to interplead setting up their respective rights and claims to said note, and that on bringing it (the note) into court, he be discharged. The order was subsequently made requiring the defendants to interplead. Still later on, each of the defendants filed their interpleas setting forth respectively their right, title and claim to the note. The proceeding, after the filing of the bill of interpleader, was very irregularly conducted, both as to the pleadings and orders of the court. The facts gleaned from the pleadings, stipulations and evidence may be summarized in this way:

1. On December 11, 1899, one Cy. Howenstine, a stockman of Custer county, in the Territory of Oklahoma, made to Ladd, Penny & Swasey of Kansas City, Live Stock Commission Merchants of said city, his negotiable promissory note for $7,857.59, due 123 days after date, to secure which he executed a certain mortgage of that date covering the following described personal property "now situate in Custer county, Okla-

homa Territory, to-wit: 435 head of stock cattle coming three years old and upward, worth $10,500 now. For further and better description, said cattle are marked and branded with one or more of the marks and brands as follows, viz.: 412 coming three-year-old heifers and upward, 23 head of bulls, all branded ‡ on left hip. Also 2,000 bushels of corn, 200 tons of kaffir corn and millet to be fed the above-mentioned cattle' during the life of this instrument. All increase of said cattle are especially covered hereby. And are all the cattle of above brand and description owned by said party of the first part. The same being now located on farm of party of the first part, north and west of Arapahoe, Custer county, Oklahoma Territory. And being all the property of the above description owned or controlled by the mortgagor, now on said premises, and this mortgage is intended to cover and include all of said property of the above description and any addition and increase thereto, located on the above described premises, and range, if any thereabouts. The' marks and brands used above to describe said property are the holding marks and brands and carry the title, although said property may have other marks and brands.''

It is conceded that the interpleader, the Merchants Bank, was the owner of said note and had acquired the same for value before maturity.

2. On the tenth day of January, 1900, the said Howenstine made a further negotiable promissory note to said commission merchants, for $6,304, due August 6, 1900, to secure which he executed a certain mortgage of that date covering the following described personal property ''now situate in Custer county, Oklahoma Territory, to-wit: 300 head of heifer cattle, coming two years old, described as follows: Value $6,900. All branded ‡ on left hip. Also 1,500 bushels of corn; 200 tons of roughness, consisting of straw, millet and hay, to be fed to the above-mentioned cattle during the

life of this instrument. All increase of said cattle are especially covered hereby. And are all the cattle of above description owned by said party of the first part. The same being now located on leased farm of party of first part near Arapahoe, Custer county, Oklahoma Territory. And being all the property of above description owned and controlled by the mortgagor now on said premises, and this mortgage is intended to cover and include all of. said property of the above description and any addition and increase thereto, located on the above described premises, and range, if any, thereabouts. The marks and brands used above to describe said property are the holding marks and brands and carry the title, although said property may have other marks and brands.''

It is further conceded that the Wakefield State Bank is the owner of said promissory note, and that it acquired the same for value before maturity.

3. It was agreed that the cattle sold to said Cantelow, and for which the $3,895.15 note in controversy was given to plaintiff Swinney, were, on December 11, 1899, and on January 10, 1900, the property of said Howenstine of Custer county, Oklahoma Territory; ''that said cattle were, on both of the dates above mentioned, heifers over one and under two years old; that on the dates above mentioned, they were all of the she-cattle owned by said Howenstine in the brand hereinafter described; that all of said heifer cattle owned by said Howenstine and sold to said Cantelow, as aforementioned, were branded on the left hip ‡ at the dates above mentioned and were located in Custer county, Oklahoma Territory, and in possession of said Howenstine; and that the term, 'coming two years old' is understood by cattlemen throughout the country generally, to mean more than one and less than two years old, and the term, 'coming three years old' is understood by cattlemen throughout the country generally, to mean over two and under three years old. And it is

further agreed by and between the said defendants that on the eleventh day of December, 1899, the cattle in controversy, that is, the cattle that were purchased by Mr. Cantelow, and for which the note in controversy was given, were located at the place described in the mortgage held by the defendant, the Merchants Bank, and that on the tenth day of January, 1900, said cattle were located at the place described in the mortgage held·by the Wakefield State Bank; that on the eleventh day of December, 1899, said Howenstine did not own she-cattle branded ‡ to exceed 412 head, and that he did not acquire any heifer-cattle of that brand between December 11, 1899, and January 10, 1900.''

There was a trial by the court of the issue between the two contesting interpleaders, which resulted in a decree in favor of the interpleader, the Wakefield Bank. The unsuccessful interpleader, the Merchants Bank, brings the cause here by appeal.

I.   It is thus made to appear from the stipulation that the cattle, purchased by Mr. Cantelow, and for which he gave his note to plaintiff, were correctly described in the mortgage of January 10, 1900—the second mortgage in order of time—and that the Wakefield Bank is a bona fide owner for value without notice of the note secured by that mortgage.  It results from this that the claim interposed by the interpleader, the Wakefield Bank, ought to be upheld, unless the said mortgage of December 11, 1899, constitutes a superior lien on said cattle so purchased by Mr. Cantelow, to that of January 10, 1900, on the same cattle, and whether or not this is so depends upon the construction that is given the descriptive terms employed in the former. As has been seen, the description in the first of said mortgages calls for ''412 coming *three-year-old* heifers and upward, all branded ‡ on left hip,'' while that in the second calls for ''300 head of heifer-cattle coming two years old.  All branded ‡ on left hip.''  It is agreed that the mortgagor, at the time of the execution

of the first mortgage, owned and had located on his farm in the county and state therein mentioned, heifers filling the description set forth in the second, but did not then or afterwards own or have any heifers filling the description set forth in the first; or in other words, the mortgagor owned and had on his farm at the date of the execution of each of said mortgages, heifers over one and under two years old in said brand, but did not, at said dates, own or have any other heifers or she-cattle of that brand. It is thus seen that the only substantial difference in the description of the cattle contained in the first mortgage and that of those purchased by Mr. Cantelow, or which is the same thing, that in the second mortgage, is as to the ages.

The question decisive of the case is whether the age of the cattle as given in the descriptive clause of the first mortgage is merely an erroneous designation which does not impair the validity or lien of said mortgage. If the age of the cattle was erroneously designated, yet, if after striking it from the description, enough remains to enable third persons, aided by the inquiries it suggests, to identify such cattle, that is all that is required to constitute a valid description. The rule is that a portion of the description in a mortgage which is erroneous may be rejected if the remainder of it is sufficient to pass the property. Jones on Chat. Mort. (4 Ed.), sec. 61; State v. Cabanne, 14 Mo. App. 294; Goff v. Pope, 83 N. C. 123. A misdescription of the age of horses or cattle mortgaged, has been held not to be material if the description is otherwise correct. Talbert v. Horton, 33 Minn. 104.

Where the description in a mortgage was vague and uncertain as to age, marks and brands, but the mortgage located the cattle in a feedlot on a certain farm, and stipulated that it embraced all the cattle in the feedlot, it was held that the cattle were at the place named in the mortgage and were all the cattle named in the mortgage and were all the cattle there, was suf-

ficient to make the lien of the mortgage valid and to put other parties upon inquiry. Evans v. Turner, 143 Mo. 638. And to the same effect is Stonebraker v. Ford, 81 Mo. 532. At the time of the execution of the mortgage, the mortgagor did not own and have on his said farm any she-cattle of any age branded ‡ other than said heifers over one and under two years old. The intention of the parties as to what cattle were to be covered by the mortgage was made perfectly plain by the conceded fact that the mortgagor had no other she-cattle which could by any possibility answer the mortgage description. If the interpleader, the Wakefield Bank, had taken the precaution to have looked, as it was required to do, at the record of mortgages of Arapahoe county, it would have there found the mortgage under which the interpleader—the Merchants Bank—claims, unsatisfied and covering 412 head of she-cattle over two and under three years old branded ‡ on left hip. If it had taken the trouble to go to the farm of the mortgagor where, as recited in the mortgage, the heifers were to be found, it could have ascertained that the mortgagor did not, at the time of making said mortgage, own or have any she-cattle on his said farm of that age and brand, and that the only she-cattle he then or afterwards owned and had on his farm, were heifers over one and under two years old of that brand. He would have in that way found out that the description as to the age of the heifers so mortgaged was erroneous.

It is apparent "that the erroneous part of the description did not apply to any other cattle, nor did that part that was correct apply to any other cattle, and taking the whole description together it did not apply to any other cattle, so that no one could be misled by the description." Bank v. Com. Co., 93 Mo. App. 123, and cases there cited. And as the mortgagor did not at the time of nor since the execution of said mortgage, own or have on his said farm in said county of Arap-

ahoe any she-cattle of any age of the brand in said mortgage specified, except the heifers over one and under two years old, the conclusion is irresistible that had interpleader (Wakefield Bank) exercised reasonable care at the time it purchased the second mortgage note, it could not have failed to discover the cattle described in said second mortgage were included in the first.

It has been held that it is incumbent on one claiming under such an instrument, in order to charge a subsequent purchaser or incumbrancer with constructive notice, to show that the description and means of identification afforded by such an instrument are not so inexplicit that had the latter exercised reasonable care at the time he became such purchaser or incumbrancer, he could not have failed to discover the property was included in the instrument. Yant v. Harvey, 55 Iowa 421; Smith v. McLean, 24 Iowa 322; Harris v. Kenneday, 48 Wis. 500; Talbert v. Horton, 33 Minn. 104. As the mortgagor, at the time he made the first mortgage, had no she-cattle of the brand specified in the description therein which were "three years coming," or over two and under three years old, that part of such description was, of course, wrong, and if it be rejected because wrong, we have left remaining the sex, brand and location, and coupling these *indicia* of ownership with the fact that the heifers over one and under two years old were all the she-cattle of any age in that brand that were at that time owned by the mortgagor, we can not doubt that the first mortgage lien, under which the interpleader—the Merchants Bank—claims, was a valid mortgage and that the interpleader—the Wakefield Bank—at the time it acquired the note described in the second mortgage, according to the rules hereinbefore referred to, must be held to be affected with notice of the existence of the said first mortgage, and that the she-cattle described in the second were included in the first and subject to the lien thereof. There

is no more evidence that the first mortgage was a fraudulent concoction than that the second was.   Both of the interpleaders are innocent purchasers for value of the mortgage paper.

We think the evidence sufficiently discloses that the first mortgage, under which the Merchants Bank claims, was signed in the presence of two persons who signed their names thereto as witnesses according to the requirements of the statute.

Our conclusion is that the interpleader, the Merchants Bank, is entitled to the fund in question and that the trial court erred in not so adjudging.   Accordingly, the judgment will be reversed and cause remanded.   All concur.